UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WINE & CANVAS DEVELOPMENT, LLC, | Case No. 1:11-cv-01598-TWP-DKL |
| Plaintiff, | |
| v. | ***JURY DEMAND ENCLOSED*** |
| THEODORE WEISSER,<br>CHRISTOPHER MUYLLE,<br>YN CANVAS CA, LLC d/b/a<br>ART UNCORKED d/b/a<br>WWW.ART-UNCORKED.COM and<br>WEISSER MANAGEMENT GROUP, LLC | |
| Defendants. | |

**AMENDED VERIFIED COMPLAINT FOR
DECLARATORY JUDGEMENT, INJUNCTIVE RELIEF AND DAMAGES**

For its Complaint against THEODORE WEISSER ("Weisser"), CHRISTOPHER MUYLLE ("Muylle"), YN CANVAS CA, LLC ("YNC") d/b/a ART UNCORKED ("AU") d/b/a WWW.ART-UNCORKED.COM ("AU Website") and WEISSER MANAGEMENT GROUP, LLC ("WMG") (Weisser, Muylle, YNC d/b/a AU d/b/a AU Website and WMG are hereinafter referred to as "Defendant(s)"), WINE & CANVAS DEVELOPMENT, LLC, ("PLAINTIFF") hereby states as follows:

**INTRODUCTION**

This is an action for injunctive and other relief arising out of Defendants' violation of the Lanham Act, 15 U.S.C. § 1114(a), 15 U.S.C. § 1125(a) and 15 U.S.C. § 1125(c), as well as Defendants' common law trademark infringement, breach of contract and covenants not to compete, acts of deception, unfair competition, conversion and intimidation/extortion. Plaintiff seeks relief including relief to enjoin Defendants' wrongful use of the WC Marks in connection

with similar goods and services, to enjoin violation of non-competition provisions and damages for breach of contract, equitable relief and tortuous claims.

## PARTIES AND JURISDICTION

1.   Weisser is an individual residing outside of the State of Indiana.

2.   Muylle is an individual residing outside of the State of Indiana.

3.   YNC is a limited liability company organized and existing under the laws of a State of Nevada as of August 31, 2011.

4.   YNC operates in the State of California, but has not filed for foreign authority with the State of California.

5.   WMG is a limited liability company organized and existing under the laws of the State of Nevada and used by Weisser as an alter ego to perpetuate the allegations described herein against Plaintiff.

6.   Plaintiff is a limited liability company organized an existing under the laws of the State of Indiana, with its principal office located in Hamilton Count, Indiana.

## COMMON ALLEGATIONS

7.   Plaintiff incorporates by reference the allegations contained in all previous paragraphs of this Complaint.

8.   At all times pertinent hereto, Plaintiff was the exclusive owner of multiple trademarks, both unregistered and (now) registered.   Such marks include common law trademarks, service marks, other marks and that certain trademark "WINE AND CANVAS" registered with United States Patent and Trademark Office (Reg. No. 4,185,017) (the "WC Marks") (*see* Exs. J and M); all of which are protected under the Lanham Act, by various state laws and/or at common law.

9.  Plaintiff is engaged a location based and mobile business operating in Indianapolis, Indiana (the "WC Business") utilizing artistic instruction and entertainment combined with alcoholic beverages offered in a variety of venues, including, but not limited to, public and private settings, corporate events, special occasions and classroom settings utilizing the Marks (the "WC Business Concept") which is currently expanding throughout the United States via affiliated entities ("Affiliated Opportunities") and will be franchising locations ("Franchising Opportunities") (Affiliated Opportunities and Franchising Opportunities are hereinafter referred to "WC Opportunities") in 2012 (hereinafter, collectively,  the "WC Expansion Concept") (WC Business Concept and WC Expansion are hereinafter referred to as the "WC Concept(s)").

10.  Plaintiff has made a considerable investment of time and money in advertising WC Marks throughout the world and developing the WC Opportunities and as a result of the same, the WC Marks are immediately recognizable.

11.  Plaintiff has acquired substantial goodwill among consumers.

12.  Products and services bearing the WC Marks are known among consumers as being high quality products.

13.  Products and services bearing the WC Marks are known by consumers to have originated and/or provided only from Plaintiff and/or an authorized licensee and/or affiliate of Plaintiff.

14.  As a result of such good will and immediate recognition, and as a result of extensive sales and advertising, the WC Marks have become highly valuable.

15.  The WC Marks are considered famous.

16.  Prior to the filing of the Plaintiff's Complaint, Weisser, Muylle and Anthony Scott ("Scott"), an officer of Plaintiff, were friends.

17.  In fact, Weisser, Muylle and Plaintiff have known each other for many years.

18.  Scott's association with Weisser spans almost twenty four (24) years (as childhood friends) and his association with Muylle spans almost three (3) years.

19.  While Plaintiff did and still does have plans to franchise the WC Expansion Concept, no franchise relationship was ever offered to Defendants as Plaintiff had not yet (and has not yet) completed Plaintiff's franchising documentation.

20.  In fact, Weisser was hired by Plaintiff for the purpose of furthering Plaintiff's plans to franchise in the future and was placed in charge of franchise and business development for Plaintiff and the Wine and Canvas brand and worked in this role from January to August of 2011.

21.  After Weisser and Plaintiff negotiated the terms of their agreement by which Weisser would provide services as indicated above to Plaintiff (the "Weisser Agreement"), Weisser subsequently and unilaterally set up WMG as Weisser's business entity and apparently assigned Weisser's income generated pursuant to the Weisser Agreement to WMG as Weisser requested that Plaintiff made all checks payable to WMG.

22.  While Weisser continued his efforts on behalf of Plaintiff toward the development of Plaintiff's WC Concepts, Plaintiff directed Weisser to begin development of licensing agreements and other related documents necessary to permit Plaintiff and/or its affiliates to partner up with persons and/or entities interested in opening a business utilizing the WC Business Concept (the "Partnership Development Directive").

23.  While Weisser drafted most of the documents  and sought little legal review or comment, any legal review of said documents were conducted in the State of Indiana by an attorney in the State of Indiana.

24. In furtherance of his Partnership Development Directive, Weisser began drafting and overseeing the development of documents in furtherance of the Partnership Development Directive which included, but is not limited to, the following draft documents:   Purchase Agreement, Option to Purchase Ownership Interest, Non-Competition Agreement ("Non--Compete"), Operating Agreement, Subscription Agreement, Licensing Agreement, Redemption Agreement, and Confidentiality Agreement (collectively, the "Draft Documents").   *See* generally Ex. A (a version of the Draft Documents).

25. These Draft Documents were actually drafted by Weisser, who was in charge of franchise and business development of the Wine and Canvas brand and who was employed by Plaintiff.

26. Having been intimately involved with the development of the WC Concepts, Weisser approached Plaintiff sometime in April of 2011 verbally requesting to partner up with Plaintiff to start a WC Business in San Francisco, California.

27. In July of 2011, Weisser informed Plaintiff of his intent to include Muylle in the prospective partnering and negotiations continued with Weisser, Muylle and Plaintiff.

28. The Parties began working on the development of a business arrangement pursuant to which the parties would form a limited liability company named Wine and WC SF Bay, LLC (meaning, Wine and Canvas of San Francisco Bay Area) (the "Planned Entity"), which would license the WC Marks and WC Business Concept and said Planned Entity, which would operate a Wine and Canvas location in San Francisco, was to be owned by two (2) members: Plaintiff (as 51% member) and YN Canvas (as 49% member) (hereinafter, the "Planned Arrangement").

29. Again, the Draft Documents, authored by Weisser's own hand, explicitly identify and evidence the existence of the Planned Arrangement.

30.  Prior to Defendants execution of the False Draft Documents and attempting to past them off to Plaintiff under ,  and without the consent, knowledge or authorization of Plaintiff, Weisser and Muylle materially revised the False Draft Documents so as to be completely and materially inconsistent with the Planned Arrangement.

31.  Despite the Planned Arrangement, Weisser and Muylle met with Plaintiff in the State of Indiana sometime around July 29, 2011, (or around the latter part of July of 2011) and delivered documents to Plaintiff  in person which Weisser and Muylle represented orally to Plaintiff (via Scott) that said documents were the Draft Documents, were complete, and were consistent with the Planned Arrangement (the "False Draft Documents"); however, these representations were false and misleading.

32.  Defendants intentionally and maliciously made the forgoing representations to Plaintiff in order to hide the fact that said documents were in fact the False Draft Documents for the purpose of enabling Defendants to operate a WC Business in San Francisco under terms different than those agreed to under the Planned Arrangement.

33.  The False Draft Documents that Weisser and Muylle executed and hand-delivered to Plaintiff in the State of Indiana are (1) the Licensing Agreement in the form attached hereto at Ex. B (the "Licensing Agreement") and (2) that certain Confidentiality Agreement in the form attached hereto at Ex. C (the "Confidentiality Agreement"), neither of which were ever knowingly executed by Plaintiff.

34.  Specifically, Weisser and Muylle revised the False Draft Documents to exclude all other agreements found in the Draft Documents and materially altered the Licensing Agreement and Confidentiality Agreement found in the Draft Documents while at the same time representing that the same were consistent with the Draft Documents and the Planned

Arrangement.

35.  Shortly after receiving the False Draft Documents, Plaintiff realized that the terms had been changed and that most of the Draft Documents were missing and began immediate attempts to rectify the situation, believing at first that Defendants had simply made an unintentional mistake.

36.  However, shortly thereafter it became clear that the Draft Documents (at least those few that were provided by Defendants) were severely and intentionally altered by Defendants and included only an amended version of the Licensing Agreement and Confidentiality Agreement.

37.  Plaintiff continued repeatedly informing Defendants that the Licensing Agreement and Confidentiality Agreement were unacceptable and incomplete and that use of the WC Business Concept was improper and should cease.

38.  Moreover, Plaintiff continuously requested, both orally and in writing, execution of documents that complied with the Planned Arrangement, including execution of the missing and altered Draft Documents, which Weisser and Muylle  continually assured Plaintiff would be forthcoming.

39.  In reliance on the forgoing representation and continued reassurances, in order to further the Planned Arrangement and within a week to two (2) weeks after delivery of the False Draft Documents to Plaintiff (which occurred around the latter part of July of 2011), Plaintiff sent representatives to San Francisco, California in order to help establish the Planned Arrangement (i.e., a San Francisco based Wine and Canvas location owned by Plaintiff and WN Canvas) and said representatives, consistent with such Planned Relationship, worked directly with Weisser and Muylle to set up the first Wine and Canvas San Francisco event, which was

successfully held.

40. However, almost immediately after this successful launch, Weisser and Muylle began ignoring Plaintiff's communications and refused to honor the Planned Arrangement, while at the same time continuing to utilize the WC Marks and the WC Concepts toting the False Draft Documents as grounds for doing the same.

41. Plaintiff continued informing Defendants that the Licensing Agreement and Confidentiality Agreement were unacceptable and incomplete and that use of the WC Business Concept pursuant to the False Draft Documents was improper and should cease immediately.

42. Weisser and Muylle delivered a unilateral termination notice (*see* Ex. K), alleging to have terminated their relationship with Plaintiff, citing reference to and relying on the False Draft Documents, and overnight changed the YN Canvas tradename from Wine and Canvas to Art Uncorked and www.artuncorked.com, and continued use of the WC Concepts, the goodwill generated by the WC Concepts and WC Marks, and utilizing lesson plans and artwork owned and generated by Plaintiff, and instances of such utilization continues presently; even after the filing of Plaintiff's Complaint and assurances from Defendants' counsel that the same would cease. *See* Exs. D-I and L.

43. Almost all of the negotiations for the Planned Arrangement took place in the State of Indiana, the Draft Documents were developed and drafted by Weisser in the State of Indiana, and the parties routinely met in the State of Indiana in furtherance of the Planned Arrangement.

44. The Weisser Agreement was entered into in the State of Indiana with Plaintiff, a corporation with its principal office located in the State of Indiana.

45. Weisser carried out his services under the Weisser Agreement in the State of Indiana and in Mobile, Alabama where Weisser resided and lived with his parents until moving to

California approximately August.

46. Contemporaneous with Weisser's relocation, the parties agreement to and did terminate Weisser's Agreement for purpose of carrying out the Planned Arrangement.

47. Prior to executing the False Draft Documents, Muylle resided in the State of Indiana and Weisser resided in the State of Alabama and, except for personal and/or unrelated visits, Muylle had never stepped foot into the State of California and Weisser had only entered the State of California two (2) to the three (3) times, each of which was with a representative of Plaintiff and for purposes of opening a Wine and Canvas location in the State of California consistent with the Planned Arrangement; such arrangement having been reached after almost eight (8) months of negotiations and planning between the parties in the State of Indiana.

48. Defendants have improperly and illegally engaged in the business of producing, advertising and/or selling products and services utilizing the WC Concepts in the State of California. *See* Exs. D-I and L.

49. Defendants have not received permission from Plaintiff, or anyone acting on their behalf to manufacture, advertise or sell any product or provide any service bearing a WC Mark and/or any such permission was obtained through switched document fraud.

50. However, Defendants routinely, purposely, and falsely represented that they would execute proper documents, including the Non-Compete for the sole purpose of leading the Plaintiff on and continuing to us the WC Concepts.

51. In addition, Defendants failed to make payments and abide by the terms of the Licensing Agreement and Confidentiality Agreement, to the extent the forgoing are found enforceable.

52. Upon information and belief, Defendants' conduct of producing, advertising and/or

selling products and/or services bearing the WC Marks without permission and/or through the use of deceptive and fraudulent acts is a deliberate attempt to trade on the trademark rights and substantial good will established by Plaintiff.

53. Defendants have willfully and intentionally engaged in the business of manufacturing, advertising and/or selling products and/or services bearing WC Marks.

54. Defendants had actual knowledge that the WC Marks were "trademarks."

55. At all times relevant, Defendants had knowledge that their use of the WC Marks was unauthorized.

56. Upon information and belief, Defendants engaged in the foregoing business with the intent to cause confusion, mistake and/or deception among consumers.

57. Upon information and belief, Defendants attempted to trade on and profit from the good will and reputation established by Plaintiff.

58. Defendant continues to utilize the WC Business Concept, but now does so under the Art Uncorked trade name in violation of the Non-Compete.

59. In furtherance of Defendants' scheme to convert the WC Business Concept, Defendants on several occasions communicated a threat to Plaintiff that, if Plaintiff were to attempt to stop Defendants scheme and/or take any action, including, but not limited to, entering into the territory in which Defendants operate or otherwise assert claims and allegations akin to those set forth herein, that Defendants would harm Plaintiff's reputation and business by exposing Plaintiff and its officers and representatives to hatred, contempt, disgrace and/or ridicule and otherwise unlawfully injure the Plaintiff and its officer and representatives.

60. The forgoing threats were made by Defendants with the intent to place Plaintiff and its officers and representatives in immediate fear of retaliation for lawful acts and/or to force the

same to engage in conduct or otherwise forbear there from against their will.

61.  On March 3, 2012, Defendants intentionally and maliciously filed for an "Extension of Time to Oppose" (the "Extension Request") the registration of the registered trademark "WINE & CANVAS".

62.  The Extension Request was filed without any grounds whatsoever and solely for the purposes of harassing Plaintiffs, delaying the registration of the referenced WC Mark, and/or for purposes of thwarting said registration.

63.  Indeed, the Extension Request was filed at the same time that Defendants sought to dismiss some of the counts set forth in Plaintiff's Complaint that required a registered trademark to survive the dismissal stage.

64.  This abuse of the legal system and its processes was perpetrated with the aid and abetting of Defendants' counsel in this matter.

65.  On August 7, 2012, despite the delay resulting from the frivolous Extension Request, the trademark "WINE & CANVAS" was granted registration with the United State Patent and Trademark Office and is currently a Federally Registered Trademark.  *See* Ex. J.

## COUNT I
## <u>VIOLATION OF 15 U.S.C. § 1114: TRADEMARK INFRINGEMENT</u>

66.   Plaintiff incorporates herein by reference the allegations contained in all previous paragraphs of this Complaint.

67. Defendants' conduct as described herein violates 15 U.S.C. §1114(1) which specifically prohibits Defendants from:

      a.      use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which use is likely to cause confusion, or to cause mistake, or to deceive, or

      b.      reproduce, counterfeit, copy, or colorable imitate a registered mark and

apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

68.     These wrongful acts were committed with knowledge that such imitation, as described in 15 U.S.C. §1114(1) (b), was intended to cause confusion, or to cause mistake, or to deceive.

69. As a result of Defendants' conduct, Plaintiff has been injured and is entitled to damages, including but not limited to, Defendants' profits from the sale of all infringing goods, actual damages, treble damages, costs of suit and attorney's fees.

## COUNT II
## VIOLATION OF 15 U.S.C. §1125(a)-FALSE DESIGNATION OF ORIGIN

70.     Plaintiff incorporates by reference the allegations contained in all previous paragraphs of this Complaint.

71. Defendants' conduct as described herein violates 15 U.S.C. §1125(a)(1)(A) which specifically prohibits them from:

[i]n connection with any goods or services, or any container for goods, us[ing] in commerce any word, term, name, symbol, or device, or any combination thereof, any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which,

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the original, sponsorship, or approval of his or her goods, services or commercial activities by another person.

72.     Plaintiff believes that they have been damaged and/or are likely to be damaged by the wrongful conduct of Defendants.

73. Defendants' violations of 15 U.S.C. §1125(a) have caused Plaintiff to incur damages, including but not limited to, Defendants' profits from the sale of all infringing goods, actual damages, treble damages, costs of suit and attorney's fees.

**COUNT III**
**VIOLATION OF IS U.S.C. §1125(c)-TRADEMARK DILUTION**

74.    Plaintiff incorporates by reference the allegations contained in all previous paragraphs of this Complaint.

75. Defendants willfully and in bad faith intended to profit from the WC Marks by trading on the reputation of Plaintiff and caused dilution of the distinctive quality of the famous WC Marks.

76. Defendants' violations of 15 U.S.C. §1125(c) have caused Plaintiff damages, including but not limited to, Defendants' profits from the sale of all infringing goods, actual damages, treble damages, costs of suit and attorney's fees.

**COUNT IV**
**SALES OF COUNTERFEIT ITEMS/SERVICES/STATUTORY DAMAGES**

77.    Plaintiff incorporates by reference the allegations contained in all previous paragraphs of this Complaint.

78. Defendants' infringing acts included, but were not limited to, the use of the "counterfeit marks" as defined by 15 U.S.C. § 1116(d) (1) (B).

79. As a result, in addition to, or in lieu of other damages or penalties, whichever Plaintiff may elect or the Court may award, Plaintiff is entitled to statutory damages pursuant to 15 U.S.C. § 1117(c).

80. Plaintiff asserts that Defendants' use of the counterfeit mark was willful, therefore Plaintiff is entitled to statutory damages of not more than $1,000,000 per counterfeit mark per type of good sold, offered for sale, or distributed, as the Court considers just.  15 U.S.C. § 1117 (c) (2).

**COUNT V**
**UNFAIR COMPETITION**

81.     Plaintiff incorporates by reference the allegations contained in all previous paragraphs of this Complaint.

82.  Plaintiff have existing and perspective contractual relationships with other affiliates authorizing the use of the WC Business Concept (hereinafter, "Authorized Licensees").

83.  Defendants' unlawful and unauthorized use of the WC Marks constitutes unfair competition with Plaintiff and their Authorized Licensees.

84.  Defendants' conduct was, and continues to be, designed to cause consumer confusion as to the source and origin of the product and/or services.

85.  Defendants' conduct was, and continues to be, calculated to cause damage to Plaintiff in their lawful business and done for the unlawful purpose of causing such damage without right or justifiable cause.

86.  Defendants' conduct as described herein has directly and proximately caused Plaintiff, and their Authorized Licensees to incur substantial monetary damages.

87.  Upon information and belief, Defendants acted willfully, maliciously, and with full knowledge of the adverse effect of such wrongful conduct upon Plaintiff, and their Authorized Licensees.  Defendants have acted with conscious disregard for the rights of Plaintiff, and their Authorized Licensees.

88.  Defendants' unfair competition has caused Plaintiff, and their Authorized Licensees damages, including but not limited to, Defendants' profits from the sale of the infringing products, actual damages, costs of suit and attorney's fees.

**COUNT VI**
**BAD FAITH; TORTIOUS CONDUCT; ABUSE OF PROCESS, ET AL.**

89.     Plaintiff incorporates by reference the allegations contained in all previous paragraphs of this Complaint.

90.  The Extension Request was meritless, groundless, and frivolous.

91.  The Extension request was filed for no other reason than to harm, hinder and harass Plaintiffs, the WC Marks, the WC Concepts and to delay these proceedings in a manner to gain an unfair and prejudicial advantage.

92.  Plaintiffs have been damaged in an amount to be determined as a result of the Defendants' filing of the Extension Request.

## COUNT VII
## CIVIL ACTION UNDER THE INDIANA CRIME VICTIMS ACT

93.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs of this Complaint.

94.  Pursuant to the Indiana Crime Victims Act, Indiana Code § 34-24-3-1, a person that suffers pecuniary loss as a result of a violation of I.C. 35-43 *et seq* may bring a civil action against the person who caused the loss for treble damages, costs of the action and a reasonable attorney's fees.

95.  Defendants have violated I.C. 35-43 in the following particulars:

   a.    For "Criminal Mischief" as expressed in I.C. 35-43-1-2;

   b.    For "Conversion" as expressed in I.C. 35-43-4-3;

   c.    For "Deception" as expressed in I.C. 35-43-5-3(a) (6) and (9); and,

   d.    For "Intimidation" as expressed in I.C. 35-45-2-1.

96.    As a result of these violations, Plaintiff has suffered actual damages in excess of the minimum jurisdictional requirements of this Court.

97.  Accordingly, Plaintiff is entitled to an award of those actual damages as well as statutory treble damages, costs and attorney's fees.

## COUNT VIII
## <u>BREACH/EQUITABLE RELIEF</u>

98.     Plaintiff incorporates herein by reference the allegations contained in all previous paragraphs of this Complaint.

99.     Defendants are in breach of the Licensing Agreement, Confidentiality Agreement, Non-Complete and have been damaged in an amount to be determined, including, but not limited to, unpaid fees, lost profits over a ten year term, expenses, costs and attorney fees and all other available remedies in law or equity.

100.     Alternatively, Plaintiffs are entitled to equitable estoppels to the extent necessary to realize the economic benefits and protections of these agreements given the circumstances of the case at bar.

## COUNT IX
## <u>FRAUD</u>

101.     Plaintiff incorporates herein by reference the allegations contained in all previous paragraphs of this Complaint.

102.     Defendants have committed fraud in fact and fraud in the inducement.

103.     As a result of the forgoing, Plaintiff has been damaged in an amount to be determined.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff seeks the following relief against the Defendants:

A.     For a declaratory judgment those Defendants have:

    (i)     Violated 15 U.S.C. §1114 by counterfeiting and thus infringing upon the WC Marks;

    (ii)     Violated 15 U.S.C. §1125(a) by falsely designating the origin of goods or engaging in false or misleading descriptions or representations of fact with respect to the origin of goods in a manner likely to cause confusion, mistake or deception among consumers as to the affiliation, connection or

association of Defendants and Defendants' goods and services with Plaintiff;

(iii)     Violated 15 U.S.C. §1125(c) by willfully and in bad faith intending to profit from the WC Marks by trading on the reputation of Plaintiff and also caused dilution of the distinctive quality of famous WC Marks;

(iv)     Engaged in unfair competition by causing confusion in the minds of the commercial merchandise community and general public as to the source and sponsorship of certain goods;

(v)     Exercised unlawful domain over the WC Marks without the permission of Plaintiff;

(vi)     That the remedies and relief set forth in the Draft Documents, Licensing Agreement, Confidentiality Agreement and Non-Compete are available to Plaintiff; and,

(vi)     That Non-Compete is enforceable.

B.     That, pursuant to 15 U.S.C. §1116, Defendants and their owners, partners, officers, directors, agents, servants, employees, representatives, licensees, subsidiaries, manufacturers and distributors, jointly and severally, are enjoined throughout the world during the pendency of this action, and permanently thereafter from:

(i)     Infringing the WC Marks in any manner;

(ii)     Manufacturing, marketing, advertising, distributing, selling, promoting, licensing, exhibiting, or displaying any product or service using WC Marks or any copies or counterfeits thereof or anything confusingly similar thereto;

(iii)      Otherwise infringing the WC Marks;

(iv)     Using any false description, representation, or designation, or otherwise engaging in conduct that is likely to create an erroneous impression that Defendants' products are endorsed by Plaintiff or any related company, sponsored by Plaintiff or any related company, or are connected in any way with Plaintiff and/or Plaintiff or any related company;

(v)     Interfering in the existing contracts or business expectancies of Plaintiff in any manner whatsoever;

(vi)     Using the WC Marks in any manner whatsoever;

(vii)     Holding themselves as licensees or otherwise authorized users of the WC Marks;

(viii)   Using the WC Marks in promotional literature or materials, including those posted on the Internet;

C.       That, pursuant to 15 U.S.C § 1118, Defendants be required to deliver up to the Court, or to some other person that the Court may designate, for ultimate destruction, any and all articles of merchandise or other things in the possession or control of Defendants which might, if sold or distributed for sale, violate the injunction granted herein.

D.       That, pursuant to 15 U.S.C. § 1117, Plaintiff be awarded Defendants' profits, actual damages, treble damages, costs of suit and attorney's fees.

E.       That, pursuant to 15 U.S.C. § 1117(c), upon Plaintiff' election and sole option, Plaintiff be awarded its just and proper statutory damages.

F.       That Plaintiff is awarded such punitive damages they may show themselves entitled to.

G.       That Plaintiff is awarded post-judgment interest on the foregoing amounts at the maximum rate allowed by law.

H.       That Plaintiff is awarded unpaid royalties and fees and future profits at a rate of 8% of gross royalties over a ten (10) year term.

I.       That Defendants and their owners, partners, officers, directors, agents, servants, employees, representatives, licensees, subsidiaries, manufacturers and distributors, jointly and severally, are enjoined throughout the world during the pendency of this action, and permanently thereafter from violation the Non-compete and otherwise operating competing business as set forth therein.

J.       For the issuance of a Writ of Attachment against the Subject Property.

K.       That Plaintiff is granted such other and further relief as this Court may deem just and proper.

[THIS SPACE LEFT INTENTIONALLY BLANK]

**DEMAND FOR TRIAL JURY**

Plaintiff hereby respectfully requests a trial by jury in this cause, and for all other relief just and proper in the premises.

**VERIFICATION**

I, Anthony Scott, affirm, under the penalties for perjury, that the foregoing "factual" representations (and not legal representations) are true and accurate to the best of my knowledge and belief.

_____
Anthony Scott, Manager


Respectfully Submitted,


s/ P. Adam Davis                            
P. Adam Davis
DAVIS & SARBINOFF, LLP
9000 Keystone Crossing, Suite 660
Indianapolis, Indiana  46240
Telephone: (317)569-1296
Facsimile: (317)569-1293
E-mail: adavis@d-slaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 27, 2012, a copy of the forgoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's CM/ECF system.

Charles Johnson Meyer
WOODARD, Emhardt, Moriarty, McNett & Henry, LLP
cmeyer@uspatent.com, docketing@uspatent.com, dsneed@uspatent.com


William A. McKenna
WOODARD, Emhardt, Moriarty, McNett & Henry, LLP
wmckenna@uspatent.com, docketing@uspatent.com, gkellermeier@uspatent.com

      Date: September 4, 2012.          Respectfully Submitted,

                                          s/ P. Adam Davis
                                          P. Adam Davis
                                          DAVIS & SARBINOFF, LLP
                                          9000 Keystone Crossing, Suite 660
                                          Indianapolis, Indiana  46240
                                          Telephone: (317)569-1296
                                          Facsimile: (317)569-1293
                                          E-mail: adavis@d-slaw.com