# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

WINE & CANVAS DEVELOPMENT LLC,    )
    )
          Plaintiff,    )
    )
        v.    )    Case No. 1:11-cv-01598-TWP-DKL
    )
THEODORE  WEISSER,    )
CHRISTOPHER  MUYLLE,    )
YN CANVAS CA, LLC,    )
    )
          Defendants.    )
_____    )
CHRISTOPHER  MUYLLE,    )
THEODORE  WEISSER,    )
    )
          Counter Claimants,    )
    )
        v.    )
    )
WINE & CANVAS DEVELOPMENT LLC,    )
WINE & CANVAS DEVELOPMENT LLC,    )
    )
          Counter Defendants.    )
_____    )
CHRISTOPHER  MUYLLE,    )
    )
          Third Party Plaintiff,    )
    )
        v.    )
    )
TAMARA  SCOTT,    )
DONALD  MCCRACKEN,    )
ANTHONY  SCOTT,    )
    )
          Third Party Defendants.    )

## ENTRY ON MOTIONS FOR SUMMARY JUDGMENT

There are currently four motions for summary judgment pending before the Court, three

of which are related and will be resolved in this Entry (Filing No. 189; Filing No. 264; Filing No.

309).  The Court will rule on the remaining motion (Filing No. 266) in a separate entry.  The parties involved in the instant matters play varying roles in this litigation.  In November 2011, Plaintiff Wine & Canvas Development, LLC ("Wine & Canvas"), filed this lawsuit against Defendant Theodore Weisser (Mr. Weisser"), Christopher Muylle ("Mr. Muylle"), YN Canvas CA, LLC, ART UNCORCKED and www.art-uncorked.com, in state court and on December 2, 2011 it was removed to federal court.  The Amended Complaint (Filing No. 36) seeks injunctive and other relief under the Lanham Act for trademark infringement and other claims.  *See* 15 U.S.C. §§ 1114(c), 1125(a), 1125(c).  Mr. Muylle then filed an Amended Answer (Filing No. 42) and brought a Counterclaim against Wine & Canvas and a Third Party Claim against Tamara Scott ("Ms. Scott"),[1] Anthony Scott ("Mr. Scott"), and Donald McCracken ("Mr. McCracken").  Since its inception, the litigation has been contentious, resulting in numerous filings, and motions that have clogged the docket and slowed down the case.  Additionally, all of the parties have in various ways violated the local rules while simultaneously accusing the other side of violations.  In short, the parties have not engaged in the sort of collegial litigation the Court expects from parties before it.  Nevertheless, the Court makes the following findings and rulings.

## I.      BACKGROUND

A brief synopsis of the history and relationships of the parties is instructive.  Prior to the filing of this lawsuit, Anthony Scott, Theodore Weisser and Christopher Muylle were friends.  Wine & Canvas, a business operating in Indianapolis, Indiana, was formed by Donald McCracken, his daughter, Tamara McCracken Scott, Anthony Scott and others.  Ms. Scott and Mr. Scott are officers, and Mr. McCracken is the sole owner of Wine & Canvas.  *See* Filing No.

---

[1] It is unclear to the Court by which name to address Tamara Scott.  In some filings, the first name is spelled Tamra, and it has been discovered in the course of litigation that her legal last name is McCracken.  However, the operative filings—Amended Complaint, Amended Answer, and Answer to Third Party Complaint—refer to her as Tamara Scott, which the Court will use in this Entry.

66 at 10.  The business utilizes artistic instruction and entertainment combined with alcoholic beverages offered in a variety of venues such as private settings, corporate events, special occasions and classroom settings.  As part of the business' plan, Wine & Canvas was to expand throughout the United States via affiliated entities and franchising locations.  Mr. Weisser, and his other company, Weisser Management Group, LLC, were hired by Mr. Scott to assist in the development of Wine & Canvas' business operations.  Mr. Weisser was joined by Mr. Muylle as a business partner to establish a California Wine & Canvas location.  Complications and disputes, which will be discussed in more detail below, arose between the parties and Mr. Weisser and Mr. Muylle terminated their relationship with Wine & Canvas and Mr. Scott.  The dispute in this lawsuit surrounds Wine & Canvas' allegations that Mr. Weisser and Mr. Muylle, having been intimately involved in the development of Wine & Canvas, infringed on the Wine & Canvas trademark, breached contracts and covenants not to compete, performed acts of deception, unfair competition, conversion and intimidation/extortion.  For their part, Mr. Weisser and Mr. Muylle deny all allegations and each have made counterclaims.

## A.      Facts in Support of **Filing No. 189**

Wine & Canvas, Ms. Scott, Mr. Scott, and Mr. McCracken filed a motion for summary judgment on Mr. Muylle's counterclaims and third party claims Counts III and IV, for cancellation of Wine & Canvas' trademark and abuse of process.  *See* Filing No. 189.  In responding to this motion, Mr. Muylle's "Statement of Material Facts in Dispute" contains only one instance of identifying a disputed fact:  "Whether Scott told Muylle in a phone call on September 18, 2012 that he knew he would lose this lawsuit but that was not his objective and his objective was to put Muylle and Weisser out of business in California."  Filing No. 225, at ECF p. 4–5.  The remainder of the section consists of legal conclusions phrased as questions,

such as, "Whether the 'Wine & Canvas Mark' has become distinctive of Plaintiff's services." Filing No. 225, at ECF p. 5. This does not identify what facts contained in the movants' brief are disputed. Therefore, in accordance with Federal Rule of Civil Procedure 56 and Local Rule 56-1, the Court will assume that the facts claimed by Wine & Canvas, Ms. Scott, Mr. Scott, and Mr. McCracken in support of their motion found at Filing No. 189, are admitted to the extent they are supported by admissible evidence.

The facts in support of the motion are as follows. The License Agreement signed by Mr. Weisser and Mr. Muylle on July 29, 2011, included a term that stated, "the Licensed Marks have come to signify a high level of quality to the purchasing public and that Licensor's use of the Licensed marks before the Effective Date has been in connection with high quality products and services." Filing No. 36-2, at ECF p. 6. It further contained sections that stated Mr. Muylle and Mr. Weisser would not take "any action that would bring any of [the marks] into public disrepute, or take any action that would reasonably be expected to destroy or diminish Licensor's ownership, value or goodwill in" the marks. Filing No. 36-2, at ECF p. 7. Finally, the agreement stated, "Licensee shall not question, contest or challenge this title or ownership by the Licensor of the Licensed Marks or the Licensed Copyrighted Works during the Term or thereafter." Filing No. 36-2, at ECF p. 8. Additionally, Mr. Muylle's counterclaims and third-party claims do not contain a piercing the corporate veil allegation.

**B.    Facts in Support of Filing No. 264 and 309**

The Court first notes that a material dispute is one that is potentially dispositive of the case. Wine & Canvas has identified several non-material facts as in dispute, for example, which location Ms. Scott managed. Facts designated by Mr. Muylle that Wine & Canvas has admitted

are true—despite bickering over specifics that are non-material—will be accepted as true by the Court.

As stated earlier, Wine & Canvas is owned by Mr. McCracken and is jointly managed by Ms. Scott and Mr. Scott. At one time, Mr. Weisser was an employee of Wine & Canvas with the title Vice President of Franchise Operations. Wine & Canvas is not a registered franchise in the State of Indiana. In 2011, Mr. Weisser prepared licensing documents that were used to open a Wine & Canvas business in Bloomington, Indiana and later in San Francisco, California.

On July 5, 2011, Mr. Weisser and Mr. Muylle formed YN Canvas CA, LLC ("YN Canvas"), which was independent from Wine & Canvas. The San Francisco licensing documents prepared by Mr. Weisser purported to grant a non-exclusive license to YN Canvas to use Wine & Canvas' trademarks and copyrights within 100 miles of San Francisco ("Licensing Agreement"). Mr. Weisser emailed the San Francisco Licensing Agreement to Mr. Scott.[2] Filing No. 265-2, at ECF p. 20. On July 29, 2011, Mr. Scott had a Wine & Canvas employee print the Licensing Agreement and he took it to Mr. Weisser and Mr. Muylle. On that same date, the Licensing Agreement was executed by Mr. Weisser and Mr. Muylle, in the presence of Mr. Scott, who did not sign the Licensing Agreement. *See* Filing No. 265-2, at ECF p. 21. Mr. Weisser and Mr. Muylle then immediately moved to California and opened a Wine & Canvas location in San Francisco, which opened its doors on August 10, 2011.

---

[2] Wine & Canvas disputes that Mr. Scott received the Licensing Agreement as an attachment to an email, which is what Mr. Scott testified to during his deposition. In an affidavit filed in response to Mr. Muylle's motion for summary judgment, Mr. Scott claims he was mistaken and now remembers that Mr. Weisser and Mr. Muylle provided the printed San Francisco Licensing Agreement. The Seventh Circuit has consistently held that a party cannot "create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony." *Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012) (quoting *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996)). Mr. Scott's deposition testimony was not "ambiguous or confusing," and thus he "cannot submit an affidavit contradicting that testimony to create an issue of fact at the summary judgment stage." *Id.*

Between August 10 and November 18, 2011, Wine & Canvas, as well as Ms. Scott and Mr. Scott, provided support to Mr. Weisser and Mr. Muylle's San Francisco location. On August 10, 2011, Ms. Scott and Mr. Scott flew to San Francisco to help launch the new business. Ms. Scott taught the first art class for the San Francisco location on that day, and also provided instruction to Mr. Weisser and Mr. Muylle. Wine & Canvas provided company email addresses and included the San Francisco location on its business website. Also on August 10, 2011, Mr. Weisser's employment with Wine & Canvas as Vice President of Franchise Operations was terminated.

On October 20, 2011, Wine & Canvas sent Mr. Weisser and Mr. Muylle a set of documents with business terms including the requirement of paying Wine & Canvas a $10,000.00 licensing fee and 51% ownership, payment of a royalty fee, and inclusion of a non-compete clause. Emails between Mr. Scott and Mr. Weisser indicate disagreement and uncertainty about the contract terms that applied to YN Canvas. Mr. Weisser and Mr. Muylle rejected the proposed contract terms, and on November 18, 2011, sent a letter terminating the July 29, 2011 Licensing Agreement. After termination, YN Canvas ceased using the Wine & Canvas name and began calling the business Art Uncorked, which was later changed to ArtSocial. Also on November 18, 2011, YN Canvas sent an email to "Wine and Canvas customers" announcing the change in name from Wine & Canvas to Art Uncorked.

Wine & Canvas filed for registration on April 12, 2011 and obtained a registered trademark on August 7, 2012. Wine & Canvas monitors its trademarks and pursues infringers. Wine & Canvas' business has been featured in nationwide media outlets. It has 41 locations in 20 states and brought in gross annual revenue in 2013 of $8 million. Wine & Canvas of Indianapolis averaged 2,500 customers per month in 2013.

Additional disputed and nonmaterial facts will be included in the discussion below as needed.

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

The summary judgment standard applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996). Indeed, the existence of cross-motions for summary judgment does not

necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the nonmovant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

### III. DISCUSSION

The Court will first address Filing No. 189 before considering the cross-motions contained in Filing No. 264 and 309.

**A.  Filing No. 189**

Wine & Canvas, Ms. Scott, Mr. Scott, and Mr. McCracken move for summary judgment on Counts III and IV of Mr. Muylle's counterclaim and third-party claim. Count III seeks cancellation of the Wine & Canvas trademark, while Count IV alleges abuse of process.

#### 1.  Cancellation of the Trademark

Wine & Canvas, Ms. Scott, Mr. Scott, and Mr. McCracken contend that Mr. Muylle's claim for cancellation must fail for two reasons. First, because he admitted the mark was genuine and signified a high quality product by signing the License Agreement. Second, because Mr. Muylle agreed in the Licensing Agreement not to contest the Wine & Canvas trademark. Neither contention prevails.

First, as pointed out by Mr. Muylle, Wine & Canvas' claims against Mr. Muylle in part rest on its belief that the Licensing Agreement was a "false" agreement and is unenforceable.

There are legal questions as to whether the Licensing Agreement is enforceable and these are not briefed in Wine & Canvas' motion for summary judgment. Second, Wine & Canvas cannot rely on *Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n*, 465 F.3d 1102, 1111 (9th Cir. 2006) for the proposition that Mr. Muylle made a binding admission. *Tillamook* applied Federal Rule of Civil Procedure 36, which deals with serving requests for admissions in the discovery process. The effect of an admission is that "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). There is no such admission before the Court. Because these are the only two grounds on which Wine & Canvas, Ms. Scott, Mr. Scott, and Mr. McCracken seek summary judgment on Count III of the counterclaim and third-party claim, their motion is **DENIED**.

### 2. Abuse of Process

The tort of abuse of process is governed by Indiana law, which requires: 1) ulterior motive, and 2) a willful act in the use of process not proper in the regular conduct of the proceeding. *Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 256 (Ind. Ct. App. 2013). It "is a prime example of litigating in bad faith." *Nightingale Home Healthcare, Inc. v. Anodyne Therapy*, *LLC*, 626 F.3d 958, 963 (7th Cir. 2010). "A suit can be wrongful even if it is not groundless, if the aim is something other than a judgment, such as bankrupting the defendant or destroying his reputation or distracting him from his other pursuits or simply immiserating him." *West v. West*, 694 F.3d 904, 906 (7th Cir. 2012). However, "[a] party is not liable if the legal process has been used to accomplish an outcome that it was designed to accomplish." *Konecranes v. Davis*, No. 1:12–cv–01700–JMS–MJD, 2013 WL 5701046, at *5 (S.D. Ind. Oct. 18, 2013) (citations omitted). Thus, the starting point of inquiry is not motive or intent, but

whether a party used an improper process to accomplish a goal other than that which the law was designed to accomplish. *Id.*. "'Process' means the procedures incident to litigation." *Brooks v. Harding*, No. IP98–1200–C–T/G, 2001 WL 548098, at *7 (S.D. Ind. March 30, 2001) (*citing Reichhart*, 674 N.E.2d at 31). In other words, "process" means the "use of judicial machinery" by which a litigant undertakes action in pursuing a legal claim. *Id.* "The test of an improper process is whether the legal steps were procedurally and substantively proper under the circumstances." *City of New Haven v. Reichhart*, 748 N.E.2d 374, 379 (Ind. 2001).

Ms. Scott, Mr. Scott, and Mr. McCracken contend that because they have not brought a claim against Mr. Muylle, the third-party claim for abuse of process cannot stand absent piercing the corporate veil, which Mr. Muylle has not pleaded. Although Wine & Canvas, Ms. Scott, Mr. Scott, and Mr. McCracken argue the merits of the abuse of process claim in their reply, they designated no facts in their summary judgment motion to support a finding on the merits. Therefore, the Court will only consider whether the claim may stand against the individual third-party defendants in the absence of an allegation to pierce the corporate veil.

Under Indiana law, "an officer is personally liable for the torts in which she has participated or which she has authorized or directed," despite absence of piercing the corporate veil. *State Civil Rights Comm'n v. Cnty. Line Park, Inc.*, 738 N.E.2d 1044, 1050 (Ind. 2000). Because this is the law of Indiana and Ms. Scott, Mr. Scott, and Mr. McCracken have not provided any facts establishing that they did not participate, authorize, or direct the actions of their company Wine & Canvas in bringing this lawsuit, they have failed to meet their burden on summary judgment. In other words, they have not shown that there is an absence of a genuine issue as to any material fact. The Court is not required to scour the record to find such facts on their behalf. Therefore, their motion is **DENIED**.

**B.** **Filing No. 264** **and 309**

Mr. Muylle seeks summary judgment on all claims and counterclaims before the Court. In response, Wine & Canvas seeks summary judgment in its favor on all claims except on its claims for fraud and breach of contract. The Court will address each claim and counterclaim in turn. However, first the Court will address Mr. Muylle's counter claim that the Wine & Canvas trademark is merely descriptive and not worthy of protection.

### 1. Cancellation of Trademark

The Lanham Act provides protection of trademarks "to secure to the owner of the mark goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198 (1985). "[F]ederal registration of a mark constitutes constructive nationwide use of the mark from the date of the application for registration." *WMS Gaming Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 603 (7th Cir. 2008). "Once a mark is registered, the Act affords a plaintiff one of two presumptions: (1) that her registered trademark is not merely descriptive or generic; or (2) that if descriptive, the mark is accorded secondary meaning." *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001). A defendant may overcome the presumption of validity with evidence that the mark is "merely generic or descriptive." *Id.* at 639. "A descriptive mark is one that describes the ingredients, qualities, or characteristics of an article of trade or a service." *Platinum Home Mortg. Corp v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 727 (7th Cir. 1998) (internal quotation omitted). "[T]erms that are suggestive, arbitrary, or fanciful are automatically entitled to trademark protection because they are inherently distinctive." *Id.*

Here, Mr. Muylle has failed to overcome the presumption of validity in Wine & Canvas' trademark. He argues that the mark "Wine & Canvas" is descriptive "because [the words] are

meant to convey exactly what they mean: they are meant to describe painting on canvas while drinking wine." Filing No. 265, at ECF p. 21. The Court disagrees. At the very least, the Court finds that the Wine & Canvas mark is suggestive of the business' offerings, that is, an instructional class of painting on canvas with the availability of wine or other alcoholic beverages. The phrase could just as easily refer to a wine and art supply store and it lacks any description of an art class.

Further, Wine & Canvas has designated undisputed evidence of a large customer base, which suggests that Wine & Canvas has acquired a specific meaning associated with the company. Mr. Muylle has not established that there is no secondary meaning in the term Wine & Canvas and has not meaningfully disputed Wine & Canvas' facts establishing the scope of its business. He argues that there is no direct evidence presented of customer testimony or surveys, but it is not Wine & Canvas' burden to establish secondary meaning—the mark is registered and Wine & Canvas enjoys the presumption of validity. *See Timelines, Inc. v. Facebook, Inc.*, 938 F. Supp. 2d 781, 793 (N.D. Ill. 2013) (finding that website with 1,000 registered users and nominal sales still supported a reasonable inference of secondary meaning of registered trademark). For these reasons, the Court finds that Mr. Muylle has failed to establish that the Wine & Canvas trademark is merely descriptive and he is not entitled to summary judgment. Because the trademark is registered and Mr. Muylle has not overcome the presumption of validity, the Court finds summary judgment in favor of Wine & Canvas is appropriate on Mr. Muylle's counterclaim for trademark cancellation. Wine & Canvas' motion on this claim is **GRANTED** and Mr. Muylle's motion is **DENIED**.

### 2. Trademark Infringement

Mr. Muylle contends that summary judgment is appropriate on Wine & Canvas'

trademark infringement claim for four reasons: (1) there can be no infringement before registration on August 7, 2012; (2) Wine & Canvas consented to Mr. Muylle's use from August to November 2011; (3) there is no evidence of likely confusion after November 18, 2011; and (4) the Wine & Canvas mark is merely descriptive and not protectable under trademark law. The Court has already found that Wine & Canvas is entitled to its registered trademark, thus, the Court will not address the fourth ground.

### a. Trademark Registration

The Court can easily dispense with Mr. Muylle's first ground for summary judgment. Wine & Canvas first applied for trademark registration on April 11, 2011. Mr. Muylle fails to acknowledge the importance of this date, which precedes the signing of the Licensing Agreement. Wine & Canvas is entitled to protection as of the date of registration. *See WMS Gaming Inc.*, 542 F.3d at 603. In short, Wine & Canvas may seek trademark infringement as of April 11, 2011.

### b. Consent to Use Trademark

Mr. Muylle also contends that Wine & Canvas consented to his use of the Wine & Canvas mark between August and November 2011, while YN Canvas was operating in San Francisco as Wine & Canvas. First, Mr. Muylle relies upon the Licensing Agreement, which explicitly provided for use of the trademark. Mr. Muylle argues then, that he was legally entitled to use the trademark until the Licensing Agreement was terminated on November 18, 2011. Wine & Canvas argues that disputed issues of fact regarding whether the Licensing Agreement was a valid and enforceable contract preclude a finding that there was contractual consent. The Court agrees. The parties hotly contest the facts of their contractual negotiations and the designated evidence indicates that during August through November 2011, the parties were not

operating under an agreed set of terms.  *See* Filing No. 265-11.  Thus, contractual consent is not a basis for summary judgment.

Second, Mr. Muylle relies upon implied consent.  He argues that the undisputed evidence establishes that Wine & Canvas provided support to YN Canvas such that "the entire course of conduct . . . may create an implied license."  *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*, 940 F. Supp. 2d 850, 863 (C.D. Ill. 2013).  Wine & Canvas contends that the theory of implied consent also requires a defendant to show "(1) the senior user actively represented it would not assert a right or claim; (2) the delay between the active representation and the assertion of the right or claim was not excusable, and (3) the delay caused the defendant undue prejudice."  Filing No. 309, at ECF p. 23 (quoting *Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 805 F. Supp. 2d 503, 512–13 (N.D. Ill. 2011)).  Specifically, Wine & Canvas argues that it never represented to Mr. Muylle that it would not assert a right or claim against him for improper use of the Wine & Canvas trademark.  The Court cannot agree with Wine & Canvas' reasoning.  The undisputed facts establish that Mr. Scott and Ms. Scott assisted with and approved of the start-up of YN Canvas in San Francisco as a Wine & Canvas business.  In the absence of a valid license agreement—which is disputed—there was, at minimum, an implied consent to use the Wine & Canvas trademark.  Further, the *Bobak* case's extra requirements come from the Second and Eleventh Circuit Courts of Appeal.  The Seventh Circuit has not adopted the additional requirements as binding law.  Even if so, from August to November 2011, the supportive actions of Wine & Canvas did suggest that it would not pursue Mr. Muylle for trademark infringement during this time period.  To suggest that Wine & Canvas would allow YN Canvas and Mr. Muylle on one hand to operate a Wine & Canvas business, while on the other hand retaining the right to sue for trademark infringement for this exact use sets bad public

policy. A business who aids another in using its trademark cannot turn around and seek damages for the use it acquiesced and abetted. Therefore, the Court finds that during the time period of August to November 18, 2011, Wine & Canvas consented to the use of its trademarks by YN Canvas and Mr. Muylle, and as a matter of law, cannot seek trademark infringement during this period.

### c.  Likelihood of Confusion after November 18, 2011

Mr. Muylle contends that after November 18, 2011, YN Canvas and Mr. Muylle ceased using the Wine & Canvas trademark and there can be no likelihood of confusion among consumers regarding the alleged use of the mark. There are seven factors to analyze to determine likelihood of consumer confusion: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to "palm off" his product as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). "Whether consumers are likely to be confused about the origin of a defendant's products or services is ultimately a question of fact. That question of fact may be resolved on summary judgment only if the evidence is so one-sided that there can be no doubt about how the question should be answered." *Id.* (internal citations and quotation marks omitted). The Court notes that while Mr. Muylle cites this standard, his briefing fails to analyze the factors.

### i. Similarity of the Marks

Under this factor, "the test is not whether the public would confuse the *marks*, but whether the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is

connected." *Id.* at 930 (emphasis in original) (internal quotation omitted). Wine & Canvas argues that after November 18, 2011, Mr. Muylle and Mr. Weisser continued to use the Wine & Canvas trademark. This evidence, which Mr. Muylle disputes, includes that the San Francisco business continued to use Wine & Canvas materials and paintings in classes, that references to Wine & Canvas could be found as late as October 18, 2012, on Art Uncorked's website and newsletter, *see* [Filing No. 299-5, at ECF p. 2](#), and that through April 2, 2012, "Wine & Canvas" was embedded in source data for Art Uncorked's, ArtSocial's, and Painting and Vino's websites. There is some evidence then that Mr. Muylle and Mr. Weisser did not completely cease using the Wine & Canvas trademark and in instances when Wine & Canvas was mentioned, its use was identical to the trademark. Such use could be interpreted by a reasonable consumer as being endorsed by Wine & Canvas, despite the San Francisco business' name change.

### ii. Similarity of the Products

Under this factor, the inquiry is whether the parties' products "are the kind the public might very well attribute to a single source." *Autozone*, 543 F.3d at 930. There can be no dispute that the products or services offered by Wine & Canvas and Mr. Muylle and Mr. Weisser are nearly identical, that is, art instruction with the availability of alcoholic beverages. Like use of the mark above, given the similarity, it is possible that Mr. Muylle's and Mr. Weisser's business could be mistaken to come from Wine & Canvas. Given this possibility, and the evidence discussed immediately below, the Court finds this factor disputed.

### iii. The Area and Manner of Concurrent Use

This factor "assesses whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *Autozone*, 543 F.3d at 932. As of November 18, 2011, Wine & Canvas did not operate in California, though it currently has California

locations in Los Angeles, Napa/Sonoma, Orange County, San Diego, and San Francisco. Wine & Canvas' evidence of the alleged infringing use references dates through 2012, though not specifically beyond. The Court was not provided with the dates on which the California Wine & Canvas locations opened, so while at first blush it may appear that the area and manner of concurrent use is immediate, the Court cannot properly analyze this factor.

Further, the manner of use alleged is not obvious, such as the Wine & Canvas name embedded in website source codes or the use of instruction manuals generated by Wine & Canvas. Additionally, on November 18, 2011, Mr. Muylle and Mr. Weisser sent an email to hundreds of current customers that announced:

> Wine and Canvas customers, we have Exciting News!! Beginning today November 18th, 2011, Wine and Canvas of San Francisco is changing our name to Art Uncorked. If you are contacted by anyone representing themselves as Wine and Canvas you will be speaking with a different entity altogether. We are excited about the re-imaging of our company brand and will continue to provide you with the best wine and painting events in the bay area!

Filing No. 299-15, at ECF p. 2. Thus, at least some customers were explicitly told that Wine & Canvas was a different entity, which indicates Mr. Muylle's and Mr. Weisser's independence. However, Mr. Muylle and Mr. Weisser continued to use instructions and paintings developed by Wine & Canvas. It also seems obvious that both businesses would share potential customers. At the least, the evidence under this factor creates a dispute.

### iv. The Degree and Care Likely to be Exercised by Consumers

When determining the degree of care to be exercised by consumers, the Seventh Circuit has stated that "the more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *AutoZone*, 543 F.3d at 933 (internal quotation omitted). There is no evidence in the record toward this factor and the Court will not consider it in either party's favor.

### v. Strength of Plaintiff's Mark

A trademark's strength "usually corresponds to its economic and marketing strength." *Id.* The Seventh Circuit has also stated that "[w]hether a mark is weak or not is of little importance where the conflicting mark is identical and the goods are closely related." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 959 (7th Cir. 1992). Wine & Canvas argues that this factor then should be given little weight, since its claim is that Mr. Muylle used the Wine & Canvas mark and not just a similar mark. Further, Wine & Canvas has presented evidence that suggests the mark is strong, despite Mr. Muylle's claim that the trademark is merely descriptive and invalid. The evidence on this factor is disputed.

### vi. Actual Confusion

Here, there is no evidence of actual confusion. Wine & Canvas asserts it has designated a "great deal" of evidence showing likely and actual confusion, but the factual allegations it references contain no evidence of actual customers showing actual confusion. This factor weighs in favor of Mr. Muylle.

### vii. Defendant's Intent

This factor analyzes whether Mr. Muylle intended to "palm off" his business as Wine & Canvas. *See AutoZone*, 543 F.3d at 933–34. Wine & Canvas argues that Mr. Muylle's intent is shown by an incident involving a negative YELP website review. In particular, Wine & Canvas alleges that before November 18, 2011, Mr. Muylle and Mr. Weisser held a Wine & Canvas event in San Francisco. A YELP user named Natalie posted a negative review about the event. After the November 18, 2011 termination, Mr. Muylle posted the negative review on his San Diego Painting and Vino Facebook page and encouraged his fans to "like" the negative review of Wine & Canvas. According to Wine & Canvas, this was a malicious attempt to put Wine &

Canvas in a negative light even though Mr. Muylle had run the event that garnered the negative review.  Mr. Muylle does not dispute that he shared the negative YELP review, but disputes the inferences suggested by Wine & Canvas.  Further, Wine & Canvas argues that when YN Canvas changed its YELP profile name from Wine & Canvas to Art Uncorked—rather than create a new account for the new business—Mr. Muylle and Mr. Weisser gained the goodwill and recognition from reviews prior to November 18, 2011 that were given to a Wine & Canvas branded business.

The Court finds however, that this evidence does not create an inference of intent as a matter of law.  "In some circumstances, an intent to confuse may be reasonably inferred from the similarity of the marks where the senior mark has attained great notoriety."  *AutoZone*, 543 F.3d at 934.  Here, there is a lack of evidence showing that as of November 18, 2011, the Wine & Canvas trademark had attained great notoriety such that Mr. Muylle's actions with YELP can be seen as intentionally "palming off" Wine & Canvas' business.

### viii.  Weighing the Factors

In sum, the Court finds that there are disputes of material fact that should be resolved by a jury.  Specifically, the facts presented do not establish whether Mr. Muylle continued to use the Wine & Canvas trademark after November 18, 2011, or whether he did so in a way that was likely to cause confusion to consumers.  The similarity of the products, manner of use, and strength of the mark are all in dispute and preclude summary judgment on Wine & Canvas' trademark infringement claim for conduct occurring after November 18, 2011.  Thus, the motions for summary judgment on this claim as for this time period are **DENIED**.

### 3.  False Designation of Origin

"[A] plaintiff making a claim of false designation of origin must show that the mark is entitled to protection as a trademark and that the false designation of origin creates a likelihood

of confusion." *Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1214 (7th Cir. 1997). When addressing this claim, both parties refer to their arguments made under the trademark infringement claim regarding likelihood of confusion. Because the parties have not specifically argued this claim, the Court will not specifically analyze it. As above, the Court finds there are disputed issues of fact precluding summary judgment for either party on likelihood of confusion, and thus, false designation of origin. The motions for summary judgment on this claim are **DENIED**.

### 4.    Trademark Dilution

The Trademark Dilution Act protects famous marks from dilution by tarnishing or blurring. *See* 15 U.S.C. § 1125(c). "Dilution by tarnishing occurs when a junior mark's similarity to a famous mark causes consumers mistakenly to associate the famous mark with the defendant's inferior or offensive product." *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 466 (7th Cir. 2000). "Dilution by blurring . . . occurs when consumers see the plaintiff's marks used on a plethora of different goods and services raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Id.* (internal quotations omitted). To succeed on a claim of dilution, a plaintiff must show actual or likely dilution.

The first hurdle to Wine & Canvas' claim is whether its trademark is "famous" under the statute. 15 U.S.C. § 1125(c)(A) defines "famous" as a mark that is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." Factors to consider include the "duration, extent and geographic reach of advertising and publicity of the mark," "amount, volume, and geographic extent of sales of goods or services offered under the mark," "the extent of actual recognition of the mark," and whether the mark is registered. 15 U.S.C. § 1125(c)(A).

The Court finds that there is insufficient evidence to consider the Wine & Canvas mark "famous" as defined under the statute. While Wine & Canvas has shown a wide reach of locations in 20 states, it has not shown that its trademark is widely recognized by the general consuming public of the United States. Nor has it shown that there is actual recognition of the mark or that its reach goes beyond the cities in which there are Wine & Canvas locations. Wine & Canvas relies on Mr. Scott's affidavit stating that the mark is famous, but this legal conclusion is not supported by actual evidence. In comparison to marks considered famous, e.g., Victoria's Secret, Prozac, Planet Hollywood, and MasterCard, there is no evidence that suggests Wine & Canvas is known to a substantial segment of the United States population such that it is entitled to protection under the Trademark Dilution Act. Even if the Court considered the trademark famous, Wine & Canvas has not established a disputed issue of fact of likely dilution. It relies upon the customer email sent on November 18, 2011, and use of YELP. Neither instance, especially the email which stated that Wine & Canvas was a different entity, raises a reasonable inference of dilution. Therefore, Mr. Muylle is entitled to summary judgment on this claim and his motion is **GRANTED**. Wine & Canvas' motion on this claim is **DENIED**.

**5.      Sales of Counterfeit Items or Services**

Wine & Canvas has brought this claim under 15 U.S.C. § 1116(d)(1)(B) for injunctive relief against use of a counterfeit trademark. There has been no specific evidence or allegation supporting use of a counterfeit trademark by Mr. Muylle. As this is the only citation and request for injunctive relief under Count IV and it is completely unsupported, Mr. Muylle is entitled to summary judgment and his motion is **GRANTED**. Wine & Canvas' motion is **DENIED**.

**6.      Unfair Competition**

Wine & Canvas' Amended Complaint includes a state law claim for unfair competition.

*See* Filing No. 36, at ECF p. 14. Mr. Muylle moved for summary judgment on the ground that Wine & Canvas has failed to show likelihood of confusion. Under Indiana law, unfair competition is a broad claim that can include palming off one's products as that of another, so-called "trade name infringement," or interference with a contract or business relationship. *Keaton and Keaton v. Keaton*, 842 N.E.2d 816, 820 (Ind. 2006). Wine & Canvas has failed to address this claim in its response to Mr. Muylle's motion for summary judgment. The Court will therefore consider this claim abandoned. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 597 (7th Cir. 2003).

### 7. Bad Faith, Tortious Conduct, Abuse of Process

Wine & Canvas' Amended Complaint pleads Count VI with three separate potential causes of action. It is based upon Mr. Muylle's alleged attempt to stall Wine & Canvas' trademark registration on March 3, 2012, by requesting an extension of time of 90 days to oppose the registration of "Wine & Canvas" as a trademark. There are no facts alleged in the Amended Complaint or summary judgment response that support any of the referenced state law claims. Wine & Canvas has been granted a trademark and it has not set forth any facts that show the Court how Mr. Muylle has acted in bad faith, with tortious conduct, or in abuse of the trademark registration or legal process. Mr. Muylle is entitled to summary judgment on this claim and his motion is **GRANTED**. Wine & Canvas' motion is **DENIED**.

### 8. Indiana Crime Victims Act

Wine & Canvas brings a claim under the Indiana Crime Victims Act, Ind. Code § 34-24-3-1, which permits a person who has suffered a pecuniary loss as a result of criminal violations to seek civil remedies. "A criminal conviction is not a condition precedent to recovery in a civil action brought under the Indiana crime victim's relief act[,]" but "all elements of the alleged

criminal act must be proven by the claimant" by preponderance of the evidence. *Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1116 (Ind. Ct. App. 2008).

Wine & Canvas alleges that Mr. Muylle has committed criminal mischief, conversion, deception, and intimidation as defined by the Indiana Code. Wine & Canvas contends that summary judgment is inappropriate for either party on his claim based on criminal mischief, conversion, and deception, but that it should be granted summary judgment for its claim based on intimidation.

### a.    Criminal Mischief

Criminal mischief is defined in Ind. Code § 35-43-1-2 as a "person who recklessly, knowingly, or intentionally damages or defaces property of another person without the other person's consent." In support of this claim, Wine & Canvas alleges that Mr. Muylle threatened to reveal the legal status of Mr. Scott's and Ms. Scott's marriage if they chose to open a business that would compete with Mr. Muylle in California. Wine & Canvas does not specify how such a threat, if made, constitutes damaging or defacing property. It further does not tie a pecuniary loss to this threat, though it does allege that Mr. Muylle caused pecuniary loss by tarnishing Wine & Canvas' brand in California. These allegations however, do not establish a genuine issue of material fact, and the Court finds in the absence of such a dispute, Mr. Muylle is entitled to summary judgment on this claim and his motion is **GRANTED**.

### b.    Conversion

Conversion is defined in Ind. Code § 35-43-4-3 as a "person who knowingly or intentionally exerts unauthorized control over property of another person." Wine & Canvas alleges that Mr. Muylle intentionally exerted unauthorized control of the Wine & Canvas trademark, customer list, and concept. It alleges pecuniary losses as a result. A trademark can

be considered property under Indiana law.  *See An-Hung Yao v. State*, 975 N.E.2d 1273, 1281 (Ind. 2012).  The facts are disputed regarding whether Mr. Muylle continued to utilize the Wine & Canvas trademark and materials after November 18, 2011, when it would have been unauthorized.  However, aside from a bald statement that Wine & Canvas has suffered pecuniary loss, there is no evidence of loss that would bring this claim under the Indiana Crime Victims Act.  In the absence of such evidence, Mr. Muylle is entitled to summary judgment on this claim and his motion is **GRANTED**.

### c.      Deception

Deception is defined in Ind. Code § 35-43-5-3.  Wine & Canvas cites subsections (6) and (9), which provide that a person who, "with intent to defraud, misrepresents the identity of the person or another person or the identity or quality of property" or "disseminates to the public an advertisement that the person knows is false, misleading, or deceptive, with intent to promote the purchase or sale of property or the acceptance of employment" commits deception.  I.C. §§ 35-43-5-3(6) and (9).  Wine & Canvas alleges that Mr. Muylle committed deception when he sent an email misrepresenting YN Canvas' identity and promoted the negative YELP review.  Wine & Canvas does not specifically argue the specific elements under the Indiana Code, nor does it provide evidence of pecuniary loss.  A general allegation cannot support a claim on summary judgment.  In the absence of evidence, Mr. Muylle is entitled to summary judgment and his motion is **GRANTED**.

### d.      Intimidation

Intimidation is defined in Ind. Code §§ 35-45-2-1(a)(1) and (2) as a "person who communicates a threat to another person, with the intent [ ] that the other person engage in conduct against the other person's will [or] that the other person be placed in fear of retaliation

for a prior lawful act." Wine & Canvas alleges that when Mr. Muylle threatened to reveal the illegality of Mr. Scott's and Ms. Scott's marriage if they opened a business in competition with Mr. Muylle's in California, that Mr. Muylle committed intimidation. However, Wine & Canvas' allegations refer to Mr. Weisser and not Mr. Muylle. Further, it has failed to establish evidence of pecuniary loss. In the absence of such evidence, Mr. Muylle is entitled to summary judgment on this claim and his motion is **GRANTED**. Wine & Canvas' motion is **DENIED**.

### 9. Breach of Contract

Wine & Canvas has brought a breach of contract claim of the Licensing Agreement, Confidentiality Agreement, and other documents. However, Wine & Canvas simultaneously contends that there was no enforceable agreement. On summary judgment, Wine & Canvas argues that this claim is only ripe for summary judgment if the Court finds there is an enforceable agreement. Mr. Muylle argues that summary judgment is appropriate in his favor because he was not a party to the Licensing Agreement or the Confidentiality Agreement, but signed it on behalf of YN Canvas as a member of the LLC. Wine & Canvas does not respond to this argument, and the Court finds Mr. Muylle's argument well-placed. *See* I.C. § 23-18-3-3(a); *Pazmino v. Bose McKinney & Evans, LLP*, 989 N.E.2d 784, 786 (Ind. Ct. App. 2013). A member is not personally liable merely because of his ownership, and Wine & Canvas has not alleged that Mr. Muylle disregarded the corporate form. *See, e.g.*, *CMG Worldwide, Inc. v. RALS-MM LLC*, No. 1:11-cv-00719-RLY-TAB, 2012 WL 4514142, at *4 (S.D. Ind. Sept. 28, 2012). Further, there is no evidence of a binding non-compete agreement in the record. It is for these reasons that summary judgment is appropriate for Mr. Muylle on this claim and his motion is **GRANTED**.

### 10. Fraud

As an initial matter, the Court notes that Wine & Canvas' Amended Complaint does not comply with Federal Rule of Civil Procedure 9(b), which states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Amended Complaint simply incorporates the preceding paragraphs and asserts that "Defendants have committed fraud in fact and fraud in the inducement." Filing No. 36, at ECF p. 16. Furthermore, on summary judgment, Wine & Canvas argues that it has produced "mounds of material evidence" that point to Mr. Muylle's fraudulent actions, yet it fails to specifically cite to this material or specifically argue why the actual elements of fraud have been met. Wine & Canvas does not even cite a legal standard for fraud. In the absence of adequate pleading and evidence, Mr. Muylle is entitled to summary judgment on this claim and his motion is **GRANTED**.

### 11. Abuse of Process

The remaining claim to resolve is Mr. Muylle's counterclaim for abuse of process. As explained above, abuse of process requires: 1) ulterior motive, and 2) a willful act in the use of process not proper in the regular conduct of the proceeding. *Estate of Mayer*, 998 N.E.2d at 256. To succeed on his abuse of process claim, Mr. Muylle must show a "misuse or misapplication of process for an end other than that which it was designed to accomplish." *Id.* Mr. Muylle contends that Wine & Canvas, Mr. Scott, Ms. Scott, and Mr. McCracken brought this lawsuit in bad faith for the purpose of pushing Mr. Muylle out of business due to the high cost of litigating this action. Wine & Canvas, Mr. Scott, Ms. Scott, and Mr. McCracken have admitted to the goal of putting Mr. Muylle out of business. *See, e.g.*, Filing No. 93, at ECF p. 9; Filing No. 265-2, at

ECF p. 34; Filing No. 265-5, at ECF p. 7; Filing No. 265-1, at ECF p. 7.  However, they also contend that their goal with this lawsuit is to recover for losses caused by trademark infringement and other claims.  The Court finds that there is a disputed issue of material fact precluding summary judgment on this claim.  Wine & Canvas, Mr. Scott, Ms. Scott, and Mr. McCracken have flooded the Court with filings which has increased the work expended on the case and Wine & Canvas has filed numerous claims that the Court has found to be without merit.  This coupled with the parties' admissions is evidence of "some extortionate perversion of lawfully initiated process to illegitimate ends."  *Estate of Mayer*, 998 N.E.2d at 256.  However, the Court does not find that the counterclaim has been satisfied as a matter of law, and thus, Mr. Muylle's motion for summary judgment is **DENIED**.

## 12.    Fees under the Lanham Act

Mr. Muylle seeks an award of fees pursuant to 15 U.S.C. § 1117(a), which provides for fees when a suit is oppressive.  The Court finds that given the Court's rulings on summary judgment, a determination of fees is inappropriate at this time.  Therefore, Mr. Muylle's motion for summary judgment on fees is **DENIED**

## IV.  CONCLUSION

Accordingly, Wine & Canvas' Motion for Summary Judgment (Filing No. 189) is **DENIED**.

Mr. Muylle's Motion for Summary Judgment (Filing No. 264) is **GRANTED in part** and **DENIED in part**.  Mr. Muylle is granted summary judgment on Counts III, IV, V, VI, VII, VIII, and IX and those claims brought by Wine & Canvas are **DISMISSED**.  Mr. Muylle is denied summary judgment on Count I of Wine & Canvas' Amended Complaint, and each of his counterclaims.

Wine & Canvas' and Third Party Defendants' Motion for Summary Judgment (Filing No. 309) is **GRANTED in part** and **DENIED in part**. Wine & Canvas is granted summary judgment on Mr. Muylle's trademark cancellation counterclaim and this counterclaim is **DISMISSED**. Wine & Canvas and Third Party Defendants are denied summary judgment on all other claims.

Wine & Canvas' Count I and Count II claims, trademark infringement and false designation of origin, remain set for trial isolated to the time period after November 18, 2011. Trial also remains set on Mr. Muylle's claim for abuse of process and fees under the Lanham Act.

**SO ORDERED.**

Date: 08/15/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Theodore Weisser
25 Rodeo Avenue, Apt. 2
Sausalito, California 94965

P. Adam Davis
DAVIS & SARBINOFF LLP
adavis@d-slaw.com

Carol Nemeth Joven
PRICE WAICUKAUSKI & RILEY
cnemeth@price-law.com

Ronald J. Waicukauski
PRICE WAICUKAUSKI & RILEY
rwaicukauski@price-law.com