# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| WINE & CANVAS DEVELOPMENT LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:11-cv-01598-TWP-DKL |
| ) | |
| CHRISTOPHER MUYLLE, THEODORE ) | |
| WEISSER, YN CANVAS CA, LLC, and ) | |
| WEISSER MANAGEMENT GROUP, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| CHRISTOPHER MUYLLE and ) | |
| THEODORE WEISSER, ) | |
| ) | |
| Counter Claimants, ) | |
| ) | |
| v. ) | |
| ) | |
| WINE & CANVAS DEVELOPMENT LLC, ) | |
| ) | |
| Counter Defendant. ) | |
| _____ ) | |
| CHRISTOPHER MUYLLE, ) | |
| ) | |
| Third Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| TAMARA SCOTT, DONALD MCCRACKEN, ) | |
| and ANTHONY SCOTT, ) | |
| ) | |
| Third Party Defendants. ) | |

## ORDER ON WINE & CANVAS PARTIES' MOTION TO ALTER OR AMEND JUDGMENT, FOR A NEW TRIAL, FOR RELIEF FROM JUDGMENT, AND FOR OTHER RELIEF

This matter is before the Court on a Motion to Alter or Amend Judgment, For a New Trial, For Relief from Judgment, and For Other Relief ("Motion to Amend Judgment") filed by Plaintiff

Wine & Canvas Development LLC ("WNC") and Third Party Defendants Anthony Scott, Tamara McCracken Scott, and Donald McCracken (collectively, "WNC Parties") (Filing No. 512). Following a four-day trial on WNC's trademark claims against Christopher Muylle ("Muylle") and on Muylle's counterclaim and third party claim for abuse of process against WNC and its principals, a jury returned a verdict in favor of Muylle on WNC's trademark claims and on Muylle's claim for abuse of process. WNC Parties filed their Motion to Amend Judgment, requesting that the jury's verdict be altered or amended or alternatively for a new trial pursuant to Federal Rules of Civil Procedure 59 and 60. For the following reasons, the Court **DENIES** WNC Parties' Motion to Amend Judgment.

## I. LEGAL STANDARD

### A. Rule 59

Under Rule 59(a), the district court has broad discretion to grant or deny a new trial. The court considers whether the verdict is against the weight of the evidence, the damages are excessive, or the trial was not fair to the moving party. *Marcus & Millichap Inv. Servs. of Chi., Inc. v. Sekulovski*, 639 F.3d 301, 313 (7th Cir. 2011). Prejudicial misconduct of counsel or a party, such as an outside influence reaching the jury, may justify a new trial. *Wiedemann v. Galiano*, 722 F.2d 335, 337 (7th Cir. 1983). Parties seeking a new trial or amendment to a verdict "bear a particularly heavy burden because a court will set aside a verdict as contrary to the manifest weight of the evidence only if no rational jury could have rendered the verdict." *Sekulovski*, 639 F.3d at 314.

The purpose of a motion to alter or amend judgment under Rule 59(e) is to ask the court to reconsider matters "properly encompassed in a decision on the merits." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989). "A Rule 59(e) motion will be successful only where the

2

movant clearly establishes: (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (citation and quotation marks omitted). Relief pursuant to a Rule 59(e) motion to alter or amend is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). A Rule 59(e) motion may be used "to draw the district court's attention to a manifest error of law or fact or to newly discovered evidence." *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010). A manifest error "is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation and quotation marks omitted). Furthermore, "a Rule 59(e) motion is not an opportunity to relitigate motions or present arguments, issues, or facts that could and should have been presented earlier." *Brownstone Publ'g, LLC v. AT&T, Inc.*, 2009 U.S. Dist. LEXIS 25485, at *7 (S.D. Ind. Mar. 24, 2009).

B. <u>Rule 60(b)</u>

Federal Rule of Civil Procedure 60(b) provides:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Rule 60(d) explains, "[t]his rule does not limit a court's power to . . . set aside a judgment for fraud on the court." "To obtain relief under Rule 60(b)(3), a party must show that she has a meritorious claim that she was prevented from 'fully and fairly presenting' at trial as a result of the adverse party's fraud, misrepresentation, or misconduct." *Wickens v. Shell Oil Co.*, 620 F.3d 747, 758–59 (7th Cir. 2010). "A party seeking to set aside a judgment under Rule 60(b)(3) or the court's inherent power must prove fraud by clear and convincing evidence." *Id.* at 759.

"Relief from a judgment under Rule 60(b) is an extraordinary remedy and is granted only in exceptional circumstances." *United States v. One 1979 Rolls-Royce Corniche Convertible*, 770 F.2d 713, 716 (7th Cir. 1985). A party requesting relief from a final judgment is required to make a strong showing under Rule 60(b) because of the "strong presumption against the reopening of final decisions." *Connecticut Nat'l Mortg. Co. v. Brandstatter*, 897 F.2d 883, 885 (7th Cir. 1990).

## II. BACKGROUND

To put it mildly, this dispute has been zealously litigated by both sides. The quantity of the motions practice has been astonishing. As a result, the facts of this case have been set forth in numerous prior Orders, therefore only a brief summary of the facts relevant to this motion will follow.

WNC is a business venture that offers artistic instruction and entertainment combined with alcoholic beverages offered in a variety of venues, including public and private settings, corporate events, special occasions, and classroom settings. As part of its business plan, WNC was to expand throughout the United States through affiliated entities and franchising locations. Muylle, as a business partner of Theodore Weisser ("Weisser"), was to establish a WNC location in California. Complications and disputes arose between the parties in their business relationship, and WNC initiated litigation. WNC filed an Amended Complaint on September 4, 2012, against Muylle,

Weisser, YN Canvas CA, LLC, and Weisser Management Group, LLC. WNC's Amended Complaint asserted the following claims: Count 1 - Trademark Infringement; Count 2 - False Designation of Origin; Count 3 - Trademark Dilution; Count 4 - Sales of Counterfeit Items; Count 5 - Unfair Competition; Count 6 - Bad Faith, Tortious Conduct, Abuse of Process, et al.; Count 7 - Civil Action Under the Indiana Crime Victims Act; Count 8 - Breach/Equitable Relief; and Count 9 - Fraud.

Weisser, as a *pro se* litigant, abandoned the case and as a result, on November 22, 2013, a Clerk's Entry of Default was entered against Weisser, YN Canvas, and Weisser Management in their capacity as third party counterclaim defendants and against YN Canvas and Weisser Management in their capacity as defendants for their failure to file responsive pleadings. As a result of the Entries of Default and the Orders on the dispositive motions, the only claims remaining for trial were WNC's trademark infringement claim and false designation of origin claim against Muylle after November 18, 2011, and Muylle's counterclaim and third party claim for abuse of process against WNC and its principals.

From November 17, 2014 through November 20, 2014, the Court conducted a jury trial on the trademark claims and the abuse of process counterclaim and third party claim. The jury returned a verdict in favor of Muylle on WNC's claims for trademark infringement and false designation of origin. The jury also returned a verdict for Muylle on his counterclaim and third party claim for abuse of process, awarding Muylle $81,000.00 against WNC, $81,000.00 against Anthony Scott, $81,000.00 against Tamara McCracken Scott, and $27,000.00 against Donald McCracken.

Following entry of the Final Judgment, WNC Parties timely filed their Motion to Amend Judgment, requesting that the jury's verdict be altered or amended or alternatively a new trial.

### III.  DISCUSSION

WNC Parties assert three bases for their Motion to Amend Judgment: (1) Muylle and his counsel committed fraud, misrepresentation, or misconduct with regard to Muylle's attorney fees; (2) the trial was not fair to WNC Parties because of the Court's evidentiary ruling regarding statements made by Anthony Scott during settlement discussions; and (3) the trial was not fair to WNC Parties because the Court took judicial notice of rulings from earlier in the litigation. The Court will address each of these arguments in turn.

**A.     Fraud, misrepresentation, or misconduct regarding Muylle's attorney fees.**

WNC Parties allege that Muylle and his counsel committed fraud, misrepresentation, or misconduct on the Court, the jury, and WNC Parties when they presented evidence and testimony regarding Muylle's attorney fees. Specifically, WNC Parties allege that Muylle fraudulently presented attorney fee statements to the jury that were grossly inaccurate, included fees incurred by other parties, included fees that had already been paid and fees for prosecution of claims that had been dismissed. (*See* Filing No. 512). Muylle has either denied each of the allegations or offered detailed explanations.

In order to obtain relief under Rule 60(b)(3), WNC Parties must prove that: (1) they maintained a meritorious claim at trial; and (2) because of fraud, misrepresentation or misconduct of the adverse party; (3) they were prevented from fully and fairly presenting their case at trial. *See Lonsdorf v. Seefeldt,* 47 F.3d 893, 897 (7th Cir.1995). In considering these requirements, a court must weigh the competing policy interests of the finality of judgment against fundamental fairness in light of all of the facts. *Square Construction Co. v. Washington Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir.1981). "[Rule] 60(b)(3) applies to both intentional and unintentional misrepresentations." *Lonsdorf* at 897. Furthermore, in resolving a Rule 60(b)(3)

motion, "[a] determination of whether the alleged misrepresentation altered the result of the case is unnecessary because Rule 60(b)(3) protects the fairness of the proceedings, not necessarily the correctness of the verdict." *Id.*

On day three of the four-day jury trial, Muylle offered into evidence Trial Exhibit 323—a summary chart of his attorney's fees and costs ("Tr. Ex. 323"). Tr. Ex. 323 indicated attorney fees totaling $258,458.50 and costs totaling $13,636.58, for a cumulative total of $272,095.08 for fees and costs. When Muylle was questioned about the foundation and accuracy of Tr. Ex. 323, he testified that he reviewed and compared Tr. Ex. 311, the abbreviated attorney fees statement of his attorney's fees, with Tr. Ex. 323 to ensure that the summary of his fees was accurate.

WNC Parties objected to Tr. Ex. 323, and the parties argued the admissibility of the exhibit outside the presence of the jury. WNC Parties argued that Tr. Ex. 323 lacked a foundation because Tr. Ex. 311 did not provide the detailed time entries for the case but rather just an abbreviated list of time and dollar amounts. WNC Parties also argued that they would not be able to fairly cross-examine Muylle regarding the summary chart or the abbreviated attorney fees statement. WNC Parties argued that they had received only a redacted version of the detailed attorney fees invoices and Muylle explained that he could lay a foundation and testify as to the accuracy of the summary chart because he had reviewed the abbreviated attorney fees statement. The Court took the matter under advisement.

Following the close of the third day of trial, the Court and counsel met to finalize the final jury instructions. During this conference, counsel again addressed the issue of Tr. Ex. 323 and the underlying fee invoices. Later that night, after the conference, Muylle's counsel emailed a copy of the detailed attorney fees invoices to WNC Parties as requested by their counsel.

The next day, the last day of trial, Muylle returned to the witness stand and was examined by counsel. Testimony was again elicited about Tr. Ex. 323, Tr. Ex. 311, and the detailed attorney fees invoices. Muylle testified that he had reviewed each of the detailed attorney fees invoices, the abbreviated attorney fees statement, and the summary chart. He testified that the fees and costs were accurate and that they were incurred by him in the litigation. He testified that he cross-checked the exhibits to ensure their accuracy. WNC Parties continued to object to the admission of Tr. Ex. 323, explaining that they had just received the underlying detailed attorney fees invoices the night before and did not have a chance to review them. Over WNC Parties' objection, the Court admitted Tr. Ex. 323, the summary chart of Muylle's attorney fees and costs, and the exhibit was submitted to the jury for its deliberations. The total fees and costs noted in Tr. Ex. 323 is $272,095.08. The jury returned a verdict with a combined total damage award of $270,000.00.

First, WNC Parties allege that Muylle and his counsel committed fraud, misrepresentation, or misconduct because Muylle's abbreviated attorney fees statement shows a bill for $22,803.75 for services rendered by Muylle's prior counsel and $235,655.50 for current counsel, totaling $258,459.25. However, Tr. Ex. 323, the summary chart, totals $258,458.50—.75 cents less. Muylle responds by explaining that in the abbreviated attorney fees statement, which was not admitted, there was an error in the underlying fee statement from prior counsel that stated the total services were $22,803.75, but if one calculates prior counsel's fees based on the hours worked multiplied by the hourly rates, the total amount is $22,803.00. This accounts for the .75 cent difference between the abbreviated attorney fees statement and the summary chart. Muylle further explains that the correct amount of $22,803.00 was reflected on Tr. Ex. 323, which was submitted to the jury, so the .75 cent error was not even before the jury. Upon review of the invoices and calculating the fee total by adding the individual time entries, the Court determines that the correct

amount of fees is $22,803.75; however, the lesser amount was submitted to the jury and a .75 cent difference is inconsequential. The jury returned a verdict totaling $2,095.08 less than the requested amount submitted in Tr. Ex. 323. This argument cannot serve as a basis to amend the verdict or for a new trial.

Next, WNC Parties argue that Muylle and his counsel committed fraud, misrepresentation, or misconduct and they allege an approximately $60,000.00 discrepancy in Muylle's current counsel's fees as calculated by WNC Parties when compared to the fees noted in Muylle's Tr. Ex. 311. In response, Muylle explains that beginning in December 2013, Muylle and his counsel entered into a new fee agreement whereby Muylle would be responsible to pay only 50% of his attorney fees unless and until he was awarded a recovery, at which point he would be required to pay the remaining 50% of his attorney fees. This temporary, conditional fee discount applied to all of Muylle's attorney fees from December 2013 through September 2014. The line item entries in Tr. Ex. 311 (the abbreviated attorney fees statement) took into account and included the 50% discount, so adding together each of those line item entries does not amount to $235,655.50, the total amount of Muylle's current counsel's fees noted at the end of the abbreviated attorney fees statement and in Tr. Ex. 323. Muylle was seeking to recover all of his attorney fees, including the 50% discounted fees that he would have to pay in the event of a recovery, so he included those discounted fees in his summary chart (Tr. Ex. 323) and at the end of the abbreviated attorney fees statement. The 50% discounted fees amounted to $65,633.50, approximately accounting for the discrepancy in fees calculated by WNC Parties.

Furthermore, Muylle asserts that Tr. Ex. 311, in which WNC Parties found the alleged errors in calculation, was not admitted and was not submitted to the jury, so any alleged errors in the line item entries could not have affected the jury's deliberations or the fairness of the

proceedings, and therefore cannot be a basis to amend the verdict or for a new trial. Upon review of the detailed invoices, the Court observes that is does reflect a $65,633.50 courtesy discount provided to Muylle on his attorney fees from December 2013 through September 2014. Because he was required to pay these fees if he received a recovery, Muylle was entitled to seek these fees from the jury. Additionally, the Court determines that the alleged miscalculations in the line item entries in Tr. Ex. 311 are not prejudicial to WNC Parties and are not a basis to amend the verdict or for a new trial because Tr. Ex. 311 was not submitted to the jury.

WNC Parties next assert an alleged inconsistency between Tr. Ex. 323 and the detailed attorney fees invoices—this time to the tune of roughly $30,000.00. WNC Parties assert that when they eventually added together all the attorney fees listed in the detailed attorney fees invoices they received from Muylle on the evening of the third day of trial, the fees totaled $206,057.00, yet Tr. Ex. 323 claimed $235,655.50 in fees for Muylle's current counsel. Therefore, WNC Parties conclude that Muylle committed fraud on the Court and the jury when he testified that he verified the accuracy of Tr. Ex. 323 by reviewing the detailed attorney fees invoices.

In response, Muylle explains that this alleged inconsistency resulted from an unintentional error while photocopying the detailed attorney fees invoices that were produced to WNC Parties the night before the last day of trial. Muylle intended to produce ten invoices covering fees and costs from December 2012 through September 2014. However, the third invoice covering June 2013 through September 2013 was inadvertently not copied and produced with the other nine invoices. The third invoice totaled $29,923.00, accounting for the discrepancy alleged by WNC Parties. Muylle points out that WNC Parties even acknowledged in their Motion to Amend Judgment that Muylle failed to produce detailed invoices for June 2013 through September 2013. When each detailed attorney fees invoice is added together, they amount to the same attorney fees

total that was submitted to the jury in Tr. Ex. 323. Muylle argues that this was not fraud, but rather, a late-night, inadvertent printing error in the middle of trial. The detailed attorney fees invoices were not admitted or submitted to the jury, so the inadvertent omission of the third invoice could not have affected the jury's deliberations or the fairness of the proceedings, and therefore cannot be a basis to amend the verdict or for a new trial.

Next, WNC Parties allege that Muylle did not incur fees related to four time entries included on Tr. Ex. 311, the abbreviated attorney fees statement. The four time entries total $948.50, and WNC Parties assert that these four entries were not actually charged to Muylle when compared to the detailed attorney fees invoices that were produced to WNC Parties. In response, Muylle explains that indeed these four entries were invoiced to him as "no charge" entries, and these "no charge" entries were accounted for as not being charged to him in the total dollar amount of the detailed attorney fees invoices, which matches the total dollar amount listed for fees on Tr. Ex. 323—the only exhibit that listed fees that was submitted to the jury. The inclusion of four "no charge" entries for $948.50 on Tr. Ex. 311 is of no consequence because Tr. Ex. 311 was not submitted to the jury, and the four "no charge" entries totaling $948.50 were not included on Tr. Ex. 323. The total amount of fees submitted to the jury did not include the four "no charge" entries. Thus, this argument does not provide a basis to amend the verdict or for a new trial.

Next, WNC Parties assert that Muylle and his counsel committed fraud, misrepresentation, or misconduct when they included in Tr. Ex. 323 and Tr. Ex. 311 attorney fees that had previously been reimbursed by WNC Parties. They explain that the Court ordered WNC Parties to pay certain of Muylle's attorney fees on three occasions as a sanction for litigation misconduct. These sanctions for attorney fees amounted to $1,815.00, $2,156.00, and $1,295.00, totaling $5,266.00. WNC Parties argue that they paid these attorney fees sanctions to Muylle, and he should not be

permitted to recover these fees again. Muylle first responds that he never made representations during trial that the fee request did not include the attorney fees that were reimbursed as sanctions awards, so there cannot be any fraud or misrepresentation on this basis. Muylle also points out that WNC Parties were aware of their sanctions payments and could have questioned him about those payments during trial, yet they chose not to ask any questions regarding the sanctions payments. Muylle explains that one purpose of a sanction is to deter misconduct, and if WNC Parties receive a credit for the sanctions payments, this purpose will not be served. Despite all this, Muylle reduced his request for fees by $5,266.00 in his separate post-trial Lanham Act fee petition in order to give a credit to WNC Parties for their sanctions payments and to eliminate any concern of double payment of these specific fees. Muylle's arguments and reduction in the post-trial fee petition are well taken, and WNC Parties' argument on this basis does not justify amending the verdict or granting a new trial.

     Lastly, WNC Parties assert that attorney fees charged on Muylle's prior counsel's fees invoice—which was not submitted to the jury—included fees incurred on behalf of other defendants in this case. WNC Parties assert that prior counsel had an appearance on file for the other defendants and that the detailed attorney fees invoice made reference to the other defendants. They also assert that the detailed attorney fees invoice included fees incurred for all of Muylle's claims, not just the abuse of process claim, as well as a fee incurred for a letter regarding a party "unrelated" to this case. Without any support or citation to the record, WNC Parties assert, "[t]he bottom line is that Muylle represented Ex. 311 (Muylle's Fee Statement) and Ex. 323 (Muylle's Fee Summary) contained those fees that Muylle incurred relating to his claim for Abuse of Process." (Filing No. 512 at 23.)

In response, Muylle explains that his prior counsel also represented the other defendants in this case for a time but that the attorney fees represented in Tr. Ex. 323, which was submitted to the jury, were fees that he alone incurred. The fees submitted to the jury did not include fees incurred by and charged to the other defendants. That the detailed attorney fees invoice had references to other defendants does not necessarily indicate that Muylle did not incur these fees. To the contrary, evidence to support Muylle's claims and defenses would be supplied by Muylle, the other defendants, and other sources, so references to the other defendants within the invoice would be expected. Within Muylle's invoice, the references to other defendants do not indicate that those defendants incurred the fees or that the tasks were undertaken for the other defendants. Regarding the letter relating to a party "unrelated" to this case, Muylle explains that the letter was sent because of communications between the "unrelated" party and WNC Parties. WNC Parties included on their trial exhibit list an exhibit directly involving this "unrelated" party, and therefore, Muylle asserts, WNC Parties should not be heard to complain about one fee incurred relating to this party that WNC Parties intended to present at trial. Regarding the inclusion of fees incurred for counterclaims beyond just the abuse of process claim, Muylle asserts that all fees incurred by him in the course of this litigation are a direct result of WNC Parties' abuse of process. If WNC Parties had not initiated this abusive litigation, Muylle never would have had to defend against claims and assert and prosecute counterclaims, including the abuse of process claim. All fees incurred by Muylle were the natural and probable consequence of WNC Parties' abuse of process. Further, Muylle never represented during trial that the fee request was limited only to his abuse of process claim. Therefore, any claim of fraud or misrepresentation on this basis cannot be sustained.

Muylle testified at trial that the fees represented in Tr. Ex. 323, which was submitted to the jury, actually were incurred by him.

> Q. Let me ask you to take a look in the notebook at Tr. Ex. 323. Have you examined that chart?
> A. Yes, I have.
> Q. Have you compared it to the invoices you have received?
> A. Yes, I have.
> Q. Does this chart accurately reflect the attorneys' fees and expenses that you've incurred in the course of this litigation?
> A. Unfortunately, yes.

(Filing No. 453 at 4–5.) The arguments advanced by Muylle are well taken. The evidence shows that the fees presented to the jury by Muylle were fees that he actually incurred. Accordingly, the Court does not find fraud or misrepresentation.

WNC Parties have not shown that Muylle benefited from the use of fraudulent documents and that they suffered an injustice. Having weighed the competing policy interests of the finality of judgment against fundamental fairness in light of all of the facts, the Court concludes that WNC Parties have not proven by clear and convincing evidence that because of fraud, misrepresentation or misconduct of Muylle, they were prevented from fully and fairly presenting their case. WNC Parties have failed to establish a basis to amend the verdict or grant a new trial on these grounds.

**B.    The Court's evidentiary ruling regarding statements made by Anthony Scott during settlement discussions.**

WNC Parties assert that they were unfairly prejudiced by the Court's admission of "privileged settlement negotiations." They assert that during Muylle's opening statement, counsel began presenting information about alleged statements made by Anthony Scott, one of the principals of WNC, during settlement negotiations that he did not care if WNC lost in the litigation because winning was not the purpose; rather, the purpose was to put Muylle out of business. WNC Parties objected to Muylle's presentation of these statements to the jury during his opening

statement. The parties argued the issue outside the presence of the jury. Eventually, the Court overruled the objection and Muylle's counsel made the following statement:

> MR. WAICUKAUSKI: Chris Muylle will testify that he said to Tony words to the following effect: "You know your case doesn't have any merit. You're going to lose. So why are you doing this?" And he will testify that Tony answered, "It doesn't matter. My objective is to put you out of business. I've got deeper pockets. Either you close your doors or my asshole attorney will close them for you." I asked Tony Scott about this at his deposition, and this is what he said, and I'll quote from his deposition exactly. "I told him I am never going to stop. Take you to court for the rest of my life if I have to --"

(Filing No. 497 at 60-61).

WNC Parties assert that they were unfairly prejudiced because Muylle's abuse of process claim was built entirely on these alleged statements during settlement negotiations.

Muylle points out that:

> Rule 408 is not an absolute ban on all evidence regarding settlement negotiations. The rule permits evidence that is otherwise discoverable or that is offered for a purpose other than establishing liability. Courts have admitted evidence of offers or agreements to compromise for purposes of rebuttal, for purposes of impeachment, to show the defendant's knowledge and intent, to show a continuing course of reckless conduct and negate the defense of mistake, and to prove estoppel.

*Bankcard Am., Inc. v. Universal Bancard Sys.*, 203 F.3d 477, 484 (7th Cir. 2000) (citations omitted). Muylle argues that the statements about which WNC Parties complain were offered "to show the defendant's knowledge and intent"—to show WNC Parties' ulterior motive in litigating this case, and thus were admissible evidence.

Regardless, the actual evidence presented to the jury regarding these statements by Anthony Scott to Muylle indicates that the statements were not privileged settlement statements. At no time during his opening statement did Muylle's counsel reference that any alleged statements by "Tony" were made during settlement negotiations. On day three of the four-day trial, before

Muylle could answer a question on direct examination concerning his conversations with Anthony Scott, WNC Parties' counsel interrupted to ask a preliminary question:

> MR. DAVIS: Just for the record, Muylle, were you having settlement discussions during that call?
> MR. MUYLLE: No.
> MR. DAVIS: Okay. I withdraw.
> THE COURT: You may answer the question.
> MR. WAICUKAUSKI: Describe what happened.
> MR. MUYLLE: Basically, I called Tony Scott. I was looking to find his objective for filing this lawsuit. It didn't seem like they were being very reasonable, so I wanted to know, really, what was motivating this decision. So he agreed to take my call. I called him up and asked him, you know, "Why are you doing this?" I asked him if it was a matter of money, you know, "Is that what you're looking for?" He said that it wasn't about money. He said that it was about us closing our doors. I told him that that wasn't going to happen, this was my livelihood. I made a lot of sacrifice to make this happen. So I told him that, "You realize if this goes to court, you know, you're not going to win; there's no merit to your claims." He said, "Well, it's not – you know, it's not about winning. I don't care if I win. My objective is to close your doors. And I have deep pockets. And if you don't close your doors, I'll have my asshole attorney close them for you."

([Filing No. 499 at 230](#)–31.)

Concerning WNC Parties' overruled objection during Muylle's opening statement, the Court notes that the final jury instructions—which were read to the jurors before they deliberated and were given to the jurors for their deliberations—instructed the jurors that "questions and objections or comments by the lawyers are not evidence" and that "the lawyers' opening statements and closing arguments to you are not evidence." ([Filing No. 441 at 4](#).) The final jury instructions also instructed the jurors, "Your first duty is to decide the facts from the evidence in the case." ([Filing No. 441 at 2](#).) Trial and appellate courts presume that the jury follows the instructions given to them. *Christmas v. City of Chicago*, 682 F.3d 632, 639 (7th Cir. 2012) ("any potential harm caused by the initial references . . . in his opening statement was ameliorated by the district court's instruction to the jury that statements by counsel are not evidence. 'As a general rule, we assume that the jury obeys the judge's instructions.'").

16

WNC Parties have failed to show any manifest error of law or fact regarding alleged "statements made during settlement negotiations." Therefore, this is not a basis to amend the verdict or grant a new trial.

C. **Judicial notice of prior rulings.**

Finally, WNC Parties assert that they were unfairly prejudiced by the Court's taking judicial notice of prior rulings in this litigation. At the foundation of their argument is WNC Parties' continued dissatisfaction with the underlying rulings of which the Court took judicial notice. A Motion to Amend Judgment is not an opportunity for WNC Parties to relitigate motions or arguments or to express disappointment as the losing party. WNC Parties have now attempted to reargue this position at least three times. The Court will not reconsider the earlier rulings of which it took judicial notice.

WNC Parties complain that the Court took judicial notice of the following, which was "provided to the Jury at the beginning of the Jury Trial": "Finally, the Court determined that 'Wine & Canvas, Mr. Scott, [Ms. McCracken], and Mr. McCracken have flooded the Court with filings which has increased the work expended on the case and Wine & Canvas has filed numerous claims that the Court has found to be without merit.'" (Filing No. 512 at 29.) WNC Parties then assert that the Court later struck this judicial notice, but "[b]y then, however, it was too late. The foregoing judicial notice had already been entered into evidence before the Jury." (Filing No. 512 at 30.)

However, the quoted judicial notice was never entered into evidence and was not submitted to the jury. Rather, Muylle's counsel referred to the quoted language during his opening statement. Counsel's opening statement is not evidence. Again, the final jury instructions instructed the jurors that "the lawyers' opening statements and closing arguments to you are not evidence." (Filing No.

17

441 at 4.) The final jury instructions also instructed the jurors, "Your first duty is to decide the facts from the evidence in the case." (Filing No. 441 at 2.) Trial and appellate courts presume that the jury follows the instructions given to them. *Christmas*, 682 F.3d at 639. The evidence of judicial notice that actually was admitted and submitted to the jury for its deliberations was Tr. Ex. 330, which redacted the quoted language of which WNC Parties complain. This last argument of WNC Parties is without merit and does not justify amending the verdict or granting a new trial.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** WNC Parties' Motion to Alter or Amend Judgment, For a New Trial, For Relief from Judgment, and For Other Relief (Filing No. 512).

**SO ORDERED.**

Date: 10/28/2015

_[signature: Tanya Walton Pratt]_

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Bryan H. Babb
BOSE MCKINNEY & EVANS, LLP
bbabb@boselaw.com

George T. Patton, Jr.
BOSE MCKINNEY & EVANS, LLP
gpatton@boselaw.com

P. Adam Davis
DAVIS & SARBINOFF LLP
efiling@d-slaw.com

Carol Nemeth Joven
PRICE WAICUKAUSKI JOVEN & CAITLIN, LLC
cnemeth@price-law.com

Ronald J. Waicukauski
PRICE WAICUKAUSKI JOVEN & CAITLIN, LLC
rwaicukauski@price-law.com