# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| WINE & CANVAS DEVELOPMENT LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:11-cv-01598-TWP-MJD |
| THEODORE WEISSER, YN CANVAS CA, LLC, and WEISSER MANAGEMENT GROUP, LLC, | ) ) ) ) |
| Defendants. | ) ) |

## ORDER ON MOTION FOR RELIEF FROM JUDGMENT AND ORDER ON COSTS

This matter is before the Court on Defendant Theodore Weisser's ("Weisser") Motion for Relief from Judgment and Order on Costs filed pursuant to Federal Rule of Civil Procedure 60(b) ([Filing No. 612](#)). Following the entry of default judgment against Weisser and an evidentiary hearing on damages, the Court issued an Order on the damages hearing and entered Final Judgment ([Filing No. 510](#); [Filing No. 511](#)), awarding Plaintiff Wine & Canvas Development LLC ("WNC") its costs of litigation. Weisser now asks the Court for relief from the Order on Costs and the Final Judgment on the bases of newly discovered evidence and WNC's fraud or misrepresentations to the Court. For the following reasons, the Court **DENIES** Weisser's Motion for Relief from Judgment.

## I. BACKGROUND

The disputes in this action surround WNC's allegations that Weisser and his business partner, Christopher Muylle ("Muylle"), having been intimately involved in the development of WNC, infringed on the WNC trademark, breached contracts and covenants not to compete, performed acts of deception, unfair competition, conversion and intimidation/extortion. WNC

initially filed a Complaint in state court on November 28, 2011, asserting numerous claims, including trademark claims under the Lanham Act against both Weisser and Muylle. The case was removed to federal court on December 2, 2011. Initially, Weisser was represented by counsel; however, his attorneys withdrew their appearance on October 5, 2012, and the Court directed the Clerk to add Weisser to the docket as a *pro se* litigant ([Filing No. 48](#)). On October 22, 2012, Weisser filed an Answer to WNC's Amended Complaint and asserted counterclaims against WNC for violation of California's franchise code and for cancellation of the WNC trademark registration ([Filing No. 51](#)). Thereafter, Weisser virtually abandoned this case. During his self-representation, Weisser disregarded many Court Orders and procedures. In November 2012, WNC filed a motion for a more definite statement from Weisser, which the Court granted ([Filing No. 112 at 3](#)). Weisser failed to comply with this Court Order.

WNC's Amended Complaint asserted claims against Weisser and his entities YN Canvas CA LLC and Weisser Management Group LLC ([Filing No. 36](#)). Weisser filed an answer for himself; however, his entities never answered the Amended Complaint. Third-party counterclaims were filed against Weisser and his entities on June 18, 2013 ([Filing No. 101](#)). Weisser and his entities never responded to these third-party counterclaims. Because Weisser and his entities did not respond, WNC moved for an entry of clerk's default pursuant to Federal Rule of Civil Procedure 55(a) ([Filing No. 131](#)). On November 22, 2013, a Clerk's Entry of Default was entered against third-party counterclaim defendants Weisser and his entities ([Filing No. 210](#)). Default also was entered against Weisser's entities as defendants to the Amended Complaint, but because Weisser had filed his Answer to the Amended Complaint, default was not entered against him individually. *Id.*

On January 22, 2013, the Magistrate Judge held a telephonic status conference in which the parties were to participate. Weisser failed to appear for the status conference, and a show cause order was issued regarding his failure to appear and participate (Filing No. 77). Weisser responded to the show cause order on February 11, 2013 (Filing No. 80). However, on April 21, 2014, the Magistrate Judge held another telephonic status conference in which the parties were to participate, and again, Weisser failed to appear for the status conference (Filing No. 304).

WNC sought to depose Weisser in January 2013 and served him with a deposition notice and subpoena in December 2012. Weisser failed to appear for his deposition. Thereafter, WNC asked the Court to compel Weisser to appear for his deposition (Filing No. 84). Weisser did not file a response to WNC's motion. The Court granted WNC's motion to compel Weisser's deposition but denied an award of sanctions (Filing No. 92). The Court also ordered Weisser to cooperate in scheduling his deposition. Despite the Court's Order, Weisser ignored WNC's efforts to reschedule his deposition and failed to cooperate in discovery. Because Weisser refused to cooperate in scheduling the deposition, WNC again sought court intervention, requesting sanctions and an order compelling the deposition (Filing No. 125). Weisser again did not file a response to WNC's motion. The Court denied the motion for sanctions because the deposition had not been rescheduled, so Weisser did not fail to attend a scheduled deposition (Filing No. 187). However, the Court reminded the parties that the previous motion to compel had been granted concerning Weisser's deposition. *Id.* at 2. The Court also warned Weisser that he could not avoid the discovery process simply by ignoring WNC's requests and advised him that his failure to appear for deposition could lead to sanctions, including a default judgment. *Id.* Weisser appeared for the deposition on December 5 and 6, 2013.

WNC moved to dismiss the counterclaims of Weisser on July 25, 2013 ([Filing No. 133](#)). Weisser never responded to the motion to dismiss his counterclaims. The Court ruled on WNC's motion and dismissed Weisser's first counterclaim, but the second counterclaim survived dismissal ([Filing No. 145](#) adopted by [Filing No. 179](#) and [Filing No. 184](#)). WNC then moved for summary judgment on Weisser's second counterclaim on February 21, 2014 ([Filing No. 266](#)). Again, Weisser did not respond to WNC's motion. The Court ruled on WNC's motion and entered summary judgment against Weisser on his second counterclaim, leaving him with no counterclaims against WNC ([Filing No. 342](#)).

In November 2012, the Court entered a Case Management Order establishing deadlines for discovery, disclosures, and dispositive motions ([Filing No. 59](#)). Despite the case management order, Weisser never filed a preliminary witness or exhibits list. He never filed a final witness list or a final exhibits list. Weisser also disregarded the Court's order to file preliminary jury instructions, an issue instruction, and verdict forms in preparation for trial. Weisser did not participate with the other parties in attempting to file any joint instructions or verdict forms.

The Court held a final pretrial conference on October 22, 2014, as trial was scheduled to begin on November 17, 2014. The parties were ordered to appear and participate in the final pretrial conference. Weisser failed to appear and participate in the final pretrial conference. On October 22, 2014, the Court ordered Weisser to show cause within seven days, in writing, why he should not be sanctioned under Federal Rule of Civil Procedure 16(f) for his failure to appear ([Filing No. 396](#)). Weisser failed to timely respond in writing to the Court's Order, and on November 10, 2014, the Court entered a default judgment against him ([Filing No. 408](#)).

As a result of the Entries of Default and Orders on the Motions to Dismiss and Motions for Summary Judgment, the only claims remaining for trial were WNC's trademark infringement

4

claim and false designation of origin claim against co-defendant Muylle after November 18, 2011, and Muylle's counterclaim for abuse of process against WNC and WNC's owners and operators: Anthony Scott ("Scott"), Tamara McCracken, and Donald McCracken. The Court informed the parties that a separate hearing after the trial would be held to determine damages as to the Defaulted Defendants ([Filing No. 411](#)).

This case proceeded to trial by jury on November 17, 2014, and the jury rendered a verdict on November 20, 2014, against WNC. Weisser had made flight arrangements to attend the trial prior to the default entry against him, and he appeared on the second day of trial and testified on behalf of Muylle. (*See* [Filing No. 449 at 2](#).) Six days after the jury trial, on November 26, 2014, Weisser retained counsel (the same counsel who had represented Muylle throughout the litigation and at trial) who entered an appearance on his behalf and filed a Motion to Set Aside the Judgment of Default that had been entered against him ([Filing No. 449](#)). That motion was denied ([Filing No. 464](#)).

The Court set a hearing to determine damages as to the Defaulted Defendants. The damages hearing was held on March 2, 2015, and Weisser and WNC were permitted to present exhibits and testimony at the hearing. WNC also asked the Court to incorporate the evidence that had been admitted during the November 2014 jury trial, which the Court granted ([Filing No. 495](#)). The parties submitted proposed findings of fact and conclusions of law three weeks after the damages hearing ([Filing No. 505](#), [Filing No. 509](#)).

On May 1, 2015, the Court issued its Order on the damages hearing and entered Final Judgment ([Filing No. 510](#); [Filing No. 511](#)). The Court determined that co-defendant YN Canvas was liable for damages in the amount of $5,088.39 on WNC's breach of contract claim. Injunctive relief also was granted against Defaulted Defendants Weisser, YN Canvas, and Weisser

5

Management Group, prohibiting them from, among other things, using WNC's trademarks. The Court also determined that WNC was entitled to recover its costs of this action from these Defaulted Defendants. *Id.* After WNC submitted its Bill of Costs, the Court entered an order awarding costs against Weisser and in favor of WNC in the amount of $10,593.17 ([Filing No. 548](#)). On April 29, 2016, Weisser filed his Motion for Relief from Judgment and Order on Costs, asking the Court to set aside the underlying Judgment for injunctive relief and the related Order on costs based on newly discovered evidence and fraud on the Court ([Filing No. 612](#)).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

"A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. Pro. 60(c)(1). Rule 60(d) explains, "[t]his rule does not limit a court's power to . . . set aside a judgment for fraud on the court." "To obtain relief under Rule 60(b)(3), a party must show that she has a meritorious claim that she was prevented from 'fully and fairly presenting' at trial as a result of the adverse party's fraud, misrepresentation, or misconduct." *Wickens v. Shell Oil Co.*, 620 F.3d 747, 758–59 (7th Cir. 2010). "A party seeking to set aside a judgment under

6

Rule 60(b)(3) or the court's inherent power must prove fraud by clear and convincing evidence." *Id.* at 759.

"Relief from a judgment under Rule 60(b) is an extraordinary remedy and is granted only in exceptional circumstances." *United States v. One 1979 Rolls-Royce Corniche Convertible*, 770 F.2d 713, 716 (7th Cir. 1985). A party requesting relief from a final judgment is required to make a strong showing under Rule 60(b) because of the "strong presumption against the reopening of final decisions." *Connecticut Nat'l Mortg. Co. v. Brandstatter*, 897 F.2d 883, 885 (7th Cir. 1990). Rule 60(b) "establishes a high hurdle for parties seeking to avoid default judgments and requires something more compelling than ordinary lapses of diligence or simple neglect to justify disturbing a default judgment." *Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994).

### III.  **DISCUSSION**

Weisser asks the Court to set aside the underlying Judgment for injunctive relief and the related Order on costs based on newly discovered evidence and fraud on the Court regarding ownership of the WNC trademark. Specifically, he states,

> Weisser and his counsel recently became aware of documentation establishing that the plaintiff Wine and Canvas Development apparently did not own the trademark at the time of the damages hearing in March 2015 and the time of this Court's judgment ordering injunctive relief (or at least the Plaintiff now takes the position that it did not own the trademark at that time because it had transferred the trademark to another related entity by January 2015, *at the latest*). This documentation was first disclosed during a creditor's meeting in the bankruptcy proceeding of plaintiff Wine and Canvas Development. This meeting occurred on March 7, 2016.

(Filing No. 612 at 2–3) (emphasis in original). The documentation consists of two documents totaling three pages, which were given to Weisser's counsel at WNC's bankruptcy proceeding one year after the damages hearing in this case (Filing No. 613; Filing No. 614).

7

The two documents are: (1) an "Intellectual Property Agreement" dated January 1, 2012, between WNC and Wine and Canvas IP Holdings LLC ("IP Holdings"), wherein WNC purports to transfer ownership of the WNC trademarks to IP Holdings, which ownership would vest upon the occurrence of any one of a number of events such as the trial in this matter; and (2) a "Trademark Ownership Acknowledgement" dated January 1, 2015, between WNC and IP Holdings, wherein WNC and IP Holdings "acknowledge" the Intellectual Property Agreement signed three years earlier and that a "trigger event"—the trial in this matter—occurred making IP Holdings "now the owner of the Mark and that all rights, title and interest in and to the Mark that have not previously been transferred by [WNC] to [IP Holdings] are now transferred in full and without reservation."  (Filing No. 614.)  Both of these documents are signed by Scott as the manager/president of both WNC and IP Holdings.

Weisser argues that, according to these newly discovered documents, WNC takes the position it that ceased owning the trademark at issue in this case as of January 1, 2015, or earlier— thus at least two months before the damages hearing against Weisser.  However, WNC never advised the Court, Weisser, co-defendant Muylle, or counsel for Weisser and Muylle of the change in ownership of the trademark prior to the damages hearing or even immediately after the hearing.  Weisser points out that WNC instead represented to this Court in its proposed findings of fact and conclusions of law submitted on March 27, 2015, that "[a]t all times pertinent hereto, Plaintiff was the exclusive owner of multiple trademarks," including the mark "WINE AND CANVAS." (Filing No. 509 at 2 ¶7).

Pointing to 15 U.S.C. § 1114(1) and *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 867 (N.D. Ill. 2009), Weisser asserts that when a plaintiff is seeking injunctive relief relating to trademark infringement, its ownership or lack thereof in the trademark at the time of the hearing and the entry

of injunctive relief is pertinent. If a plaintiff did not own the trademark at that time, as a matter of law, it had no standing to seek an injunction or assert any claim.

During the November 2014 trial, Muylle's counsel (now Weisser's counsel), moved the Court for judgment on the evidence under Rule 50. Counsel cited *Specht* and argued that WNC did not own the trademark at issue and thus lacked standing. Counsel made the argument based on testimony from Scott during trial and his explanation of his affidavit submitted in a Florida court that averred ownership of the trademark had transferred to IP Holdings. Scott's trial testimony was that WNC owned the trademark. WNC's counsel also represented to the Court that WNC owned the trademark. At the time of trial, Muylle's (and now Weisser's) counsel did not have the two documents memorializing the transfer of ownership in the trademark. The Court denied Muylle's Rule 50 motion because there was other evidence to support WNC's ownership of the trademark.

> Weisser asserts,
>
> The evidence at issue relating to the ownership of the trademark constitutes both newly discovered evidence and misrepresentation. Ownership of the trademark had been transferred as of January 1, 2015—at the latest—but the Plaintiff did not advise the Court or Mr. Weisser. On or about January 1, 2015, the President of Wine and Canvas Development, Anthony Scott, signed the "Trademark Ownership Acknowledgement." (Ex. 2). Then this Court held the damages hearing as to Weisser on March 2, 2015. (Dkt. 495). At that hearing, the Plaintiff moved to incorporate (or take judicial notice) of all evidence admitted during the November 17-20 jury trial (with two exceptions related to fees and negotiations). (See Dkt. 494). This evidence included the testimony of Mr. Scott that the Plaintiff still owned the trademark, as well as the exhibit showing its trademark registration. (Trial Ex. 502). Subsequently, the Plaintiff presented proposed findings to this Court indicating that the Plaintiff owned the mark *at all relevant times*. In apparent reliance on these representations, the Court entered an injunction against Weisser and ordered him to pay the Plaintiff's costs.

([Filing No. 612 at 6](#).)

Before summarizing WNC's response to Weisser's Motion for Relief from Judgment, the Court first notes that WNC's counsel has recycled its response brief in opposition to Muylle's independent motion for turnover of trademarks (*compare* Filing No. 643 *with* Filing No. 626), which has required the Court to parse through irrelevant arguments to discern WNC's response to Weisser's pending Motion. WNC claims that the "same exact issue" raised in Muylle's motion for turnover of trademarks is also presented in Weisser's pending Motion (Filing No. 643 at 15); however, "fraudulent conveyance," "piercing the corporate veil," and "alter ego" are not issues raised in Weisser's Motion for Relief from Judgment.

WNC asserts that "Muylle" did not designate admissible evidence to support his motion. Its position is that "Muylle" failed to submit an affidavit to authenticate facts or documents, therefore, "Muylle's" allegations must be disregarded because they are simply legal conclusions or irrelevant to the issues. WNC complains that "Muylle" has taken inconsistent positions throughout the litigation. In particular, at times "Muylle" has argued that WNC owned the WNC trademark and at other times he has argued that WNC does not own the trademark (Filing No. 643 at 2–3). These responses from WNC regarding Muylle's resolved motion are not relevant to Weisser's pending Motion, and thus, the Court disregards them.

WNC also argues that the Court lacks jurisdiction to "hear what would essentially need to be a new claim involving IP Holdings. . . . IP Holdings was never a party to this case. . . . A property owner must name all parties interested in the property before title can be quieted." (Filing No. 643 at 3–4.) WNC asserts that it cannot "'turnover' the Mark," because it "cannot 'turnover' what it no longer has." *Id.* at 4. Again, these responses are irrelevant to Weisser's Motion, and thus, the Court disregards them.

Relevant to Weisser's pending Motion, WNC asserts that the Court has already found that WNC was the owner of the trademark and had standing to protect its interests when the Court ruled against Muylle at the end of the jury trial on his Rule 50 motion for judgment as a matter of law. WNC then quotes at length from the Court's Order on Muylle's post-trial motion for turnover of trademarks, which discussed among other things the issue of the "newly discovered evidence"— WNC's "Intellectual Property Agreement" and "Trademark Ownership Acknowledgement." (*See* Filing No. 640 at 4–6, 10–12, 13.)

Based on that Order and counsel's arguments during trial, WNC asserts that the ownership of the WNC trademark was not newly discovered evidence at the time of trial or at the time of the damages hearing on Weisser's default judgment. Weisser, and his post-trial-retained counsel, should have been more diligent in seeking particular documents that would have further confirmed the information they already knew about IP Holdings and the ownership of the trademark. WNC argues that Weisser and his counsel knew about a transfer of ownership, and the documentation was nothing more than two documents that Weisser and counsel chose to ignore. They failed to diligently pursue discovery of the two documents, and WNC never received or ignored a discovery request specifically aimed at the documents or IP Holdings.

WNC further argues that ownership of the trademark at the time of Weisser's damages hearing is irrelevant because the default judgment as to Weisser's liability already had been issued against him. Once a judgment had been obtained, WNC asserts it no longer was required to hold ownership of the trademark to maintain standing for the damages hearing.

In reply to WNC's arguments, Weisser emphasizes portions of the Order on the motion for turnover of trademarks, where the Court made note of "WNC's lack of candor regarding its transfer of a future interest in the Mark," and "its misrepresentations regarding ownership of the Mark in

11

its findings and conclusions submitted for the damages hearing." ([Filing No. 640 at 13](#).) Regarding diligence in seeking discovery, Weisser asserts that WNC has not been cooperative throughout the discovery process, and WNC did not produce the two documents at issue upon Weisser's counsel's request until the creditor's hearing in 2016. Thus, Weisser asserts, any more "diligence" on his part in seeking production of the two documents would have been futile. Weisser also asserts that it was reasonable for him (and the Court) to rely on Scott's trial testimony and WNC's counsel's arguments during trial, as well as the USPTO trademark registration, that WNC actually did own the trademark. Thus, Weisser had no reason to believe that he needed to conduct additional discovery regarding trademark ownership.

While providing relief under Rule 60(b) is within the Court's discretion, the Court again notes that "[r]elief from a judgment under Rule 60(b) is an extraordinary remedy and is granted only in exceptional circumstances," *One 1979 Rolls-Royce Corniche Convertible*, 770 F.2d at 716, and the party requesting relief from a final judgment is required to make a strong showing under Rule 60(b) because of the "strong presumption against the reopening of final decisions." *Brandstatter*, 897 F.2d at 885.

Concerning the parties' arguments about WNC's proposed findings of fact, Scott's Florida affidavit, the late production of two documents, diligence in the discovery process, and testimony and arguments during trial, the Court incorporates its prior decision on the motion for turnover of trademarks and refers the parties to that Order at pages 10 through 12 and 13 ([Filing No. 640 at 10](#)–12, 13). While there certainly was a lack of candor toward the Court and opposing counsel and the parties, WNC's actions and representations do not rise to the level of fraud on the Court.

Though the Court is troubled by WNC's counsel's lack of candor in the proposed findings of fact and conclusions of law, proposed orders are not evidence and are not representations made

under oath. Courts are free to use or disregard parties' proposed orders. The Court's orders are based on the evidence, not on proposals of counsel. Regardless, counsel should not include in proposed orders facts that are not based on the evidence or that portray an inaccurate account of the facts.

Regarding "newly discovered evidence" and diligence in discovery, Weisser claims that "WNC would not have willingly provided the documentation previously, even if Weisser or his counsel had known the facts that would have led them to ask for the documentation before." ([Filing No. 647 at 6](#).) However, Weisser and his counsel did know the facts that would have led them to ask for the documentation. These very facts were discussed during trial and during post-trial proceedings. Weisser's assumption that WNC would not have cooperated in discovery does not excuse his failure to even attempt to seek more information and documentation regarding any transfer of interest in the WNC trademark, especially in light of the information that was known and discussed during trial. Weisser could have sought an order from the Court compelling WNC's cooperation if indeed WNC did not cooperate. But Weisser never pursued this path.

Default judgment was rightfully entered against Weisser because he willfully chose not to defend against this action after filing his Answer and counterclaims. He then failed to diligently pursue discovery after learning that a transfer of interest in the WNC trademark likely had occurred. The Court is not persuaded that Weisser has met his burden to entitle him to relief from judgment under Rule 60(b). Therefore, Weisser's Motion is **denied**.

### IV. CONCLUSION

For the reasons discussed above, Weisser's Motion for Relief from Judgment and Order on Costs is **DENIED** ([Filing No. 612](#)).

**SO ORDERED**.

Date: 10/26/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

P. Adam Davis
DAVIS & SARBINOFF, LLC
adavis@d-slaw.com

Brad A. Catlin
PRICE WAICUKAUSKI JOVEN & CATLIN, LLC
bcatlin@price-law.com

Ronald J. Waicukauski
PRICE WAICUKAUSKI JOVEN & CAITLIN, LLC
rwaicukauski@price-law.com

Carol Nemeth Joven
PRICE WAICUKAUSKI JOVEN & CAITLIN, LLC
cnemeth@price-law.com